Mitra Ebadolahi (SBN 275157)
mebadolahi@aclusandiego.org
David Loy (SBN 229235)
dloy@aclusandiego.org
**ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone:  619.232.2121
Facsimile:   619.232.0036

Attorneys for Plaintiff ALTON JONES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTON JONES,<br><br>                    Plaintiff,<br><br>v.<br><br>U.S. BORDER PATROL AGENT HERNANDEZ; DOE U.S. BORDER PATROL AGENTS #1 through #4, each sued in their individual capacities,<br><br>                    Defendants. | Case No.: **'16CV1986 W    WVG**<br><br>**COMPLAINT FOR DAMAGES (VIOLATION OF FOURTH AMENDMENT RIGHTS):**<br>**1. Unconstitutional Detention & Arrest**<br>**2. Excessive Use of Force**<br>**3. Unconstitutional Search**<br><br>**DEMAND FOR JURY TRIAL** |

   Plaintiff Alton Jones ("Mr. Jones" or "Plaintiff") brings this action against U.S. Border Patrol Agent Hernandez and Doe U.S. Border Patrol Agents #1 through #4 (collectively, "Defendants"), in their individual capacities, and alleges as follows:

1

# INTRODUCTION

1. Alton Jones is a 57-year-old U.S. citizen. He served as a Navy SEAL from 1977 until his honorable discharge in 1990. He lives with his wife Ana Isabel Jones and their young son in San Diego, California. Their home faces the rear side of the Imperial Beach Border Patrol station.

2. On August 9, 2014, Mr. and Mrs. Jones took their young son to the Border Field State Park / Tijuana Estuary, approximately five miles from their home.

3. Mr. Jones attempted to jog through the State Park, but was assaulted and detained overnight by Defendants without explanation or justification.

4. The Defendants' conduct violated Mr. Jones's Fourth Amendment rights to be free from unreasonable search and seizure and excessive force. He brings this lawsuit to vindicate those rights.

5. Through this action, Mr. Jones seeks money damages pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for violation of his rights under the Fourth Amendment to the U.S. Constitution.

# JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

7. This court has the power to award money damages for constitutional violations pursuant to *Bivens*, *supra*, and to grant declaratory relief pursuant to 28 U.S.C. § 2201.

8. This court has personal jurisdiction over Defendants.

9. Venue is proper in the Southern District of California pursuant to 28 U.S.C. §§ 1391(b) and 1391(e) because the events which give rise to this action occurred within this district and Plaintiff resides within this district.

## PARTIES

10. Plaintiff Alton Jones is, and at all times relevant was, a U.S. citizen and California resident working and residing in San Diego County.

11. Upon information and belief, Defendant Agent Hernandez (first name unknown) is, and at all times relevant was, a U.S. Border Patrol agent.

12. Upon information and belief, Doe Defendant Agents #1 through #4 are, and at all times relevant were, U.S. Border Patrol agents.

13. Plaintiff is ignorant of the true names of Doe Defendants #1 through #4. Plaintiff therefore sues said Defendants by said fictitious names. Upon information and belief, Doe Defendants #1 through #4 were at all relevant times U.S. Border Patrol personnel in San Diego Sector acting under color of law and within the course and scope of their authority. Plaintiff will amend this complaint to show said Defendants' true names and capacities when the same have been ascertained. Plaintiff believes, and based thereon alleges, that Defendants sued as Doe U.S. Border Patrol Agents #1 through #4 are in some manner responsible for the acts and injuries alleged herein.

14. All Defendants are sued in their individual capacities for damages.

## FACTUAL ALLEGATIONS

### Arrival at Border Field State Park / Tijuana Estuary

15. On the afternoon of August 9, 2014, Mr. and Mrs. Jones and their then-six-year-old son visited the Border Field State Park / Tijuana Estuary, off Monument Road in San Diego.

16. Upon arrival, the Joneses paid $5 to gain entry to the State Park and received a map of the area. Mr. Jones then drove the family into the park and toward the beach, coming to a stop past the beach turnabout.

17. While the Joneses were still in the car with the motor running, a Border Patrol agent in a patrol vehicle (upon information and belief, Defendant Hernandez) pulled up alongside their car and told them they could not park where they had stopped.

3

18. Mr. Jones asked Agent Hernandez for instructions on where to park instead; the agent told them to park further up on the asphalt, and Mr. Jones obliged.

19. The Joneses got out of their vehicle and carried a beach umbrella, towels, and their son's toys to a spot nearby on the sand.

20. Mr. Jones then left his wife and son on the beach to go for a short run. He was wearing a t-shirt and shorts, with his iPhone strapped to his arm and his white earphones in; he was carrying nothing else on his person. He carried no weapons, nor did he reasonably appear to be carrying any weapon. Mr. Jones was also wearing a GPS watch, which he set before starting off.

### Mr. Jones's Attempted Run

21. Mr. Jones headed onto a sand path that appeared to go up and around the wildlife reserve. This sand path leads up to a paved road that runs parallel to an area immediately adjacent to Friendship Park and the U.S.-Mexico border fence. Neither the sand path nor the paved road had any barriers, signs, or other visible indicators that the area was restricted to pedestrians.

22. After approximately half a mile, Mr. Jones noticed a Border Patrol vehicle up ahead moving quickly downhill toward him. He phoned his wife and told her, referring to Defendant Hernandez, "I think that Border Patrol agent is flying down the hill toward me for some reason."

23. While on the phone with his wife, Mr. Jones was approached from the rear by another Border Patrol agent (Doe Defendant #1), who pulled up alongside him in another vehicle. Mr. Jones removed his iPhone earphones and told this agent that he intended only to run up the hill and back down to the beach.

24. Simultaneously, the agent approaching from the front reached Mr. Jones; Mr. Jones saw that this was, in fact, the same agent who had approached the family near the beach and instructed them to move their car (upon information and belief, Defendant Hernandez).

25. Defendant Hernandez got out of his patrol vehicle, shouting to Mr. Jones to "turn the fuck around." Offended, Mr. Jones replied, "What's your fucking problem?"

26. Mr. Jones immediately turned around and began jogging back down the road toward the beach.

27. Within a couple hundred yards, however, Mr. Jones saw additional Border Patrol agents on quad bikes and a third patrol vehicle heading toward him.

28. Mrs. Jones, who was still on the line with Mr. Jones, told her husband to return to her and their son on the beach. Mr. Jones told her he was trying to do so, but that he was being surrounded.

<u>Assault and Arrest by Defendants</u>

29. Fearing that if he ran down from the paved road onto the trail, the agents on the quad bikes would collide with him or use their weapons, Mr. Jones decided to stay on the paved road as he tried to return to his family on the beach. Mr. Jones committed no crime, and he took no actions giving the Defendants any reasonable suspicion or probable cause to believe that he had committed or was about to commit any crime. Mr. Jones presented no threat to the Defendants' safety and took no actions that would have led reasonable officers to fear for their safety.

30. As Mr. Jones continued on the road, however, the agents tackled him without any warning or justification for doing so. Upon information and belief, at least four Border Patrol agents were involved in this initial altercation: Defendant Hernandez, Doe Defendant #1, and the two additional Border Patrol agents who had each arrived on a quad bike (Doe Defendant #2 and Doe Defendant #3).

31. Mr. Jones was pummeled to the ground. One or more of the agents hit Mr. Jones on his back and around his neck. Mr. Jones tried to put his hands behind his back and felt someone's knee on his spine. His arms were twisted up hard behind him, causing him severe pain.

32. Mr. Jones repeatedly asked the agents to stop. At no point did he resist the agents or react with force of his own.

5

33. Despite this, one or more agents made the false accusation that Mr. Jones had "just assaulted a federal agent." Mr. Jones denied this charge, and again tried to explain that he was simply out for a jog while his wife and child awaited his return down by the water.

34. The force used by Defendants on Mr. Jones was excessive and unreasonable because (a) Defendants had no reasonable suspicion or probable cause that Mr. Jones had committed any crime, much less any serious or violent crime; (b) Mr. Jones was neither armed nor reasonably believed to be armed; (c) Mr. Jones did not threaten or reasonably appear to threaten the Defendants' safety; and (d) Mr. Jones did not assault any Defendant or resist arrest.

35. These events transpired between approximately 3:10 p.m. and 3:30 p.m.

36. A blond-haired Border Patrol agent (Doe Defendant #4) handcuffed Mr. Jones tightly, took him over to a patrol vehicle, and placed him in the back seat.

37. Mr. Jones recalls that the heater was on in the car, and it was uncomfortably hot.

38. Mr. Jones asked to speak with a supervisor. Within a few minutes, a supervisory officer (upon information and belief, Agent McFarland) came over to the car and opened the door to the backseat to speak to Mr. Jones.

39. Mr. Jones explained that he and his family were visiting the beach and that he had been out for a short run before being surrounded, tackled, and detained by the Border Patrol agents.

40. Mr. Jones asked Agent McFarland why he was being detained; the supervisor replied that he would get back to Mr. Jones "in a second" and that he first needed to get information from the agents on the scene.

41. Moments later, Agent McFarland told Mr. Jones he was under arrest for assaulting a federal officer and read him his rights.

42. Mr. Jones protested that he had done nothing wrong and that the agents had, in fact, hurt *him*.

43. Mr. Jones was left in the backseat of the patrol vehicle, with the heater on, for another fifteen or twenty minutes.

44. Doe Defendant #4 then returned to the patrol vehicle to take Mr. Jones to the nearby Imperial Beach Border Patrol station, located at 1802 Saturn Boulevard, San Diego, CA 92154.

45. When Mr. Jones again tried to explain that his wife and child were waiting for him back on the beach and that he was injured, Doe Defendant #4 replied "Fuck you, I don't feel sorry for you, the other guy has a fucking broken ankle because of you." The accusation that Mr. Jones was responsible for any agent's broken ankle was false.

46. Doe Defendant #4 then turned off the paved road onto the sand trails, turned on very loud rap music, and accelerated sharply. Mr. Jones saw dust kick up and fly around the car before the agent turned around and went back up a hill toward an open area.

47. Doe Defendant #4's driving during this "rough ride" caused Mr. Jones to be jostled severely in the backseat of the patrol vehicle.

48. Mr. Jones also saw Doe Defendant #4 putting on leather gloves while driving and worried that he was being taken somewhere to be beaten up. Mr. Jones felt helpless and extremely frightened.

### Arrival at Imperial Beach Border Patrol Station

49. After this inexplicable and unnecessary driving detour, Doe Defendant #4 and Mr. Jones arrived at the Imperial Beach Border Patrol station around approximately 4 p.m.

50. Doe Defendant #4 removed Mr. Jones from the car, took him into the station, and searched him incident to arrest, in excess of a limited frisk for weapons, in the absence of any reason to believe Mr. Jones was armed and dangerous.

51. Mr. Jones asked for an attorney; he was told "just relax, we'll get to that in a minute."

52. Mr. Jones again tried to explain his concerns about his wife and child being stranded at the State Park: his wife could not operate the family's manual transmission vehicle, and his six-year-old son would not understand why his father had not come back after a run. Mr. Jones explained that he was a local business owner with no criminal record and said he did not understand why he was being detained. Finally, Mr. Jones complained of back, hip, and shoulder pain, and asked to be taken to a hospital to receive medical care.

53. Rather than respond to Mr. Jones, one or more of the agents at the station placed Mr. Jones into a detention cell.

<u>Overnight Detention Without Charge or Access to An Attorney</u>

54. Mr. Jones was detained overnight at the Imperial Beach Border Patrol station, from approximately 4 p.m. on August 9, 2014 until approximately 8 a.m. on August 10, 2014.

55. Throughout this detention, Mr. Jones repeatedly requested an attorney but was never provided one. Instead, the Border Patrol agents on duty either ignored him or told him that they had been unable to contact an attorney.

56. Likewise, Mr. Jones repeatedly informed the Border Patrol that he had been injured, complaining of, inter alia, back, hip, and shoulder pain; nevertheless, Mr. Jones was never provided with any medical treatment during his detention.

57. When Mr. Jones banged on his cell door at various intervals during his detention to ask for a lawyer or to be released, one or more agents on duty threatened him with "the chair"—a form of punishment whereby a detainee is strapped to a chair with a hood or spit bag placed over his head.

58. Throughout his detention, Mr. Jones tried to get some sort of explanation for his treatment from the Border Patrol. He was provided with conflicting explanations for his detention, including that he was under arrest for assaulting a federal officer; that he would not be charged with assaulting a federal officer but instead with "resisting arrest"; that he would be transferred to county jail and charged with "felony resisting arrest"

(resisting with force); that he would not be transferred to county jail; that no federal charges would be brought against him; and that it was uncertain whether state charges would be brought against him.  The lack of clarity or explanation for his arrest and detention caused Mr. Jones extreme anguish.

59. This extreme anguish was compounded by the acute anxiety Mr. Jones felt at being separated from his wife and young child, and upon overhearing Border Patrol agents at Imperial Beach station laughing at him while he sat in his cell (for example, saying in mocking tones, "He says he's an American.").

60. Mr. Jones was ultimately released around 8 a.m. on August 10, 2014.  He was given no paperwork or any other record of his detention before he was released.

61. All told, Mr. Jones was detained for a total of approximately seventeen hours.  He was never charged with any crime.

## CLAIMS FOR RELIEF

Plaintiff incorporates by reference the allegations of paragraphs 1 through 61, above, as though fully set forth herein.

## FIRST CLAIM FOR RELIEF

**Unconstitutional Detention and Arrest—Fourth Amendment to the U.S. Constitution (*Bivens*)**

62. Defendants detained and arrested Plaintiff without reasonable suspicion or probable cause, or failed to prevent his detention and arrest without reasonable suspicion or probable cause despite reasonable opportunity to do so.

63. The detention, arrest, search, unnecessary and extended restraint, interrogations, and overnight incarceration of the Plaintiff by the Defendants, as described in paragraphs 1 through 61, constituted an unreasonable seizure in violation of clearly established rights under the Fourth Amendment to the U.S. Constitution.

## SECOND CLAIM FOR RELIEF

**Excessive Use of Force—Fourth Amendment to the U.S. Constitution (*Bivens*)**

64. In detaining and arresting Plaintiff, Defendants used excessive and unreasonable force, or failed to prevent the use of excessive and unreasonable force on Plaintiff despite reasonable opportunity to do so, in violation of clearly established rights under the Fourth Amendment to the U.S. Constitution.

## THIRD CLAIM FOR RELIEF

**Unconstitutional Search—Fourth Amendment to the U.S. Constitution (*Bivens*)**

65. The search of Plaintiff's person violated clearly established rights under the Fourth Amendment to the U.S. Constitution, because it was conducted without a warrant in the absence of any valid exception to the warrant requirement.  It was unjustified as a search incident to arrest, because Defendants lacked probable cause to make an arrest.  It was unjustified as a frisk for weapons because it exceeded the scope of a valid frisk and Defendants lacked reasonable suspicion that Mr. Jones was armed and dangerous.  Any Defendant who did not conduct the search unconstitutionally failed to prevent the search despite reasonable opportunity to do so.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. Awarding general and compensatory damages against Defendants, in an amount to be proven at trial;
2. Awarding punitive damages against Defendants, in an amount to be proven at trial;
3. Declaring Defendants' conduct to be unlawful;
4. Awarding Plaintiff the costs and fees incurred in this litigation;
5. Prejudgment interest; and
6. Such other relief as the court deems appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: August 8, 2016

ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES

By **/s Mitra Ebadolahi**
Mitra Ebadolahi (SBN 275157)
Attorney for Plaintiff