# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTON JONES, <br><br> Plaintiff, <br><br> vs. <br><br> U.S. BORDER PATROL AGENT GERARDO HERNANDEZ *et al.*, <br><br> Defendants. | Case No.: 16-CV-1986-W(WVG) <br><br> **ORDER ON DISCOVERY DISPUTES OVER ANNOTATED MAP AND SOCIAL MEDIA POSTINGS** |

Pending before the Court is the parties' dispute over Defendants' document production requests for an annotated map and social media postings. Plaintiff submitted the unredacted annotated map to the Court for *in camera* review, and the Court convened an informal teleconference with the parties' attorneys and heard argument on July 28, 2017. The Court finds Plaintiff waived privileges as to the annotated map and orders production of the unredacted map. The Court further finds Defendants' request for social media postings is overbroad and accordingly sustains Plaintiff's objection.

/ / /

/ / /

# I. DISCUSSION AND RULINGS

## A. Annotated Map

### 1. Background

The first discovery dispute involves a map generated by Plaintiff's Nike GPS fitness watch. The map depicts the area in which the events of this case transpired as well as Plaintiff's route of travel that day. Plaintiff printed this map from the Nike website and used it during discussions with one of his attorneys in October 2014. The map contains several handwritten annotations by Plaintiff and two annotations by plaintiff's counsel.

Plaintiff identified the disputed map in his initial disclosures, apparently intending to re-print the map and produce it without the annotations. However, when Plaintiff attempted to do so, he discovered that the map on the Nike website was different than the map he had initially printed. When Plaintiff responded to Defendants' Request for Production of Documents ("RFP") (Set One), he neither produced the annotated map nor provided a privilege log.

Defendants then noticed that the map was identified in Plaintiff's initial disclosures but had not been produced and no privilege log had been provided. Defendants followed up multiple times and eventually discovered that the map contained Plaintiff's own handwritten notes and also contained his attorney's notes. This was contrary to Defendants' understanding (based on Plaintiff's counsel's representation to them) that the map contained only attorneys' notes. Plaintiff eventually opted to produce the original map, but redacted all of handwritten annotations. After multiple requests, Plaintiff also finally provided a privilege log and answered five questions Defendants posed about the nature of the document. However, Plaintiff produced this privilege log beyond the 30-day deadline set forth in Federal

Rule of Civil Procedure 34(b)(2)(C).[1] This dispute concerns whether Plaintiff must produce the map with some or all of the handwritten annotations unredacted.

### 2. Legal Standard

#### a. Work-Product Doctrine

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product doctrine is a qualified protection limiting discovery of "documents and tangible things" prepared by a party or his or her representative in anticipation of litigation or trial. *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see also* Upjohn Co., 449 U.S. at 397-402; Fed. R. Civ. P. 26(b)(3). The party claiming work product protection bears the burden of establishing that the work product doctrine applies. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). A party may obtain discovery of work product only on a showing of "substantial need" and an inability to obtain equivalent information from other sources. Fed. R. Civ. P. 26(b)(3)(A)(ii). Even when a court orders disclosure of work product, "it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). These materials—otherwise known as "opinion" work product—represent the "core types of work product" that the doctrine was designed to protect. *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 n.3 (9th Cir. 2014).

#### b. Attorney-Client Privilege

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in

---

[1] Unless otherwise noted, all further references to the Rules are to the Federal Rules of Civil Procedure.

3

response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal quotation and citation omitted).

Courts typically employ an eight-part test to determine whether the attorney-client privilege applies: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* (quotation omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *Martin*, 278 F.3d at 999).

### c. Waiver

Responses and objections to request for production of documents are due within 30 days of being served. Fed. R. Civ. P. 34(b)(2)(A). Withholding a document based on privilege requires the withholding party to (1) make an objection, Fed. R. Civ. P. 34(b), that (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," Fed. R. Civ. P. 26(b)(5). This objection must be specific—not a generalized, boilerplate objection. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) ("*Burlington*").

The Advisory Committee notes to Rule 26(b)(5) make clear that withholding otherwise discoverable materials on the basis that they are privileged or subject to the work product doctrine without notifying the other parties as provided in Rule 26(b)(5)(A) "may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) Advisory Committee's comment. The Ninth Circuit has expressly rejected "a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Burlington*, 408 F.3d at 1149.

In the Ninth Circuit, determining waiver is a case-by-case determination where the Court considers: (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient);" (2) "the timeliness of the objection and accompanying information about the withheld documents;" (3) "the magnitude of the document production;" and (4) "other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Id.* In evaluating these factors, the court is directed to apply them "in the context of a holistic reasonableness analysis" and not in a "mechanistic determination of whether the information is provided in a particular format." *Id.* The ultimate intent here is "to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*

### 3. Discussion

As an initial matter, the Court finds that the annotated map is the type of document that ordinarily could qualify as work product. Plaintiff and one of his attorneys made the annotations as they met and discussed future litigation. However, whether the attorney-client privilege applies is a closer question the Court need not address given the Court's finding that Plaintiff waived any privilege or protection here.[2]

---

[2] *Burlington* involved assertion of privileges and protections generally and the waiver of privileges and protections when a privilege log is not produced in a timely manner. In this context, *Burlington* discussed both the attorney-client privilege and the work-product doctrine. *See, e.g.*, 408 F.3d at 1147-48 (Rule 26(b)(5) "'does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.'") (quoting Rule26(b)(5)), 1148 ("[A]t least one circuit has refused to issue a writ of mandamus to a trial court, where the latter had ruled that untimeliness had destroyed the attorney-client privilege . . . ."). Thus, the Court's waiver analysis applies to both, and the Court need not decide whether the annotated map also qualifies as attorney-client communications.

The first *Burlington* factor—the degree the assertion of privilege enables Defendants to assess the asserted privilege—does not favor waiver here. After Plaintiff failed to voluntarily produce a privilege log or explain the basis for any privilege or protection asserted as to the claimed privileges, Defendants asked him to provide responses to five questions about the annotated map. These questions included who wrote on the map, who was the recipient of the map and communications, and what was the subject matter of the communications. Plaintiff responded on July 17, 2017 and answered these questions. With respect to the subject matter, Plaintiff responded that the annotations involved "[t]he subject incident and incident location . . . written by [Plaintiff] and for the purpose of seeking legal advice and obtaining legal representation." Defendants contend Plaintiff's responses are inadequate and do not allow for reasonable assessment of the privilege or protection claims. The Court finds that although Plaintiff's responses remain vague, they are sufficient. Without identifying the specific content of the annotations, Plaintiff's responses sufficiently inform Defendants that he and his attorney made notes on a map during a meeting while he discussed his case and sought legal advice and representation.

The second *Burlington* factor—timeliness of the objection and accompanying information—favors a finding of waiver. Plaintiff's initial response to Defendants' RFPs was produced on June 19, 2017—32 days after Defendants' RFPs issued. When Plaintiff responded, he failed to lodge any objection to production of the annotated map and failed to provide a privilege log. Thus, as an initial matter, Plaintiff failed to comply with the procedures set forth in Rules 26 and 34 by not providing a timely privilege log. He ultimately did not provide any sort of viable privilege log until July 17, 2017—31 days after it was originally due. Although this delay is troubling, had untimeliness been Plaintiff's only transgression here, the Court could potentially find no waiver occurred. However, what is most troubling in this case is Plaintiff's conduct up to the July 17, 2017 privilege log production. Plaintiff failed to disclose the true nature

6

of the document, did not comply with his privilege log obligation, and then finally revealed the true nature of the document and provided a privilege log only after defense counsel pursued the matter and essentially forced Plaintiff to do so.

During this process, Plaintiff led defense counsel to believe that all of the annotations on the map were attorneys' notes. At Plaintiff's deposition on June 30, 2017, Plaintiff's counsel informed defense counsel that the map contained "[a]ttorney notes" without any indication that it also contained Plaintiff's own notes. Counsel made this statement despite the fact that only two of the annotations on the map were made by counsel.[3] After the deposition, defense counsel followed up, noting in an email on July 7, 2017 that the map Plaintiff had identified in his initial disclosures had not been produced and no privilege log had been produced. On July 10, 2017, Plaintiff's counsel responded that they were preparing supplemental responses that would "include the partially-redacted version of the printout (redacting the minimum necessary to protect privilege and work product)." Still, there was no mention of Plaintiff's annotations on the map, and defense counsel remained under the impression—based on the representation made during the deposition—that the map contained only attorney notes.

Plaintiff then provided supplemental responses on July 10, 2017. In Plaintiff's counsel's email to defense counsel, she noted the annotated map contained "certain handwritten notes and symbols that represent privilege and work product . . ." and indicated Plaintiff had "redacted the minimum necessary to protect and preserve attorney-client privilege and attorney work product protection." However, *every* annotation on the map had been redacted, and Plaintiff continued to fail to clarify that

---

[3] Had Plaintiff's counsel been mistaken when she initially told defense counsel that the map contained attorneys' notes only, counsel should have proactively corrected this mistake when she later reviewed the map and discovered it mostly contained Plaintiff's own notes.

7

the map contained annotations made by anyone other than an attorney. Certainly Plaintiff's cryptic reference to "certain handwritten notes" failed to clarify or correct any prior mistake or misrepresentation. And Plaintiff still did not provide a privilege log despite redacting the map and claiming privilege. This was 53 days beyond the date Defendants issued their RFPs.

On July 13, 2017, defense counsel responded to Plaintiff's supplemental responses and specifically requested five categories of information related to Plaintiff's redacted map. These categories included the type of information Defendants believed was necessary to enable them to assess Plaintiff's claim. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii). One of Plaintiff's four attorneys responded on July 13, 2017, stating that she was travelling and would respond at a later date.

On July 17, 2017, another Plaintiff's attorney responded to Defendants' email that requested the five categories of information. In this response, and for the first time, Plaintiff informed Defendants that the map also contained Plaintiff's own annotations. In fact, the nature of the annotations seems to have changed. While Plaintiff had previously represented that the map contained only attorneys' notes, he now represented that the "author" of the redacted privileged communications was himself. Then, Plaintiff relegated his attorneys' annotations to secondary status: "Also redacted are notes of Plaintiff's counsel . . . ." In the same email, Plaintiff's counsel noted that her team had not previously objected to production of the annotated map because they "believed they would be able to obtain a clean copy" but had not been able to do so because the Nike account no longer contained the map as it appeared in the annotated version. Plaintiff's responses to Defendants' five categories of information for the first time provided Defendants information that could assist their assessment of his claims. This was 61 days after Defendants' RFPs issued and 31 days after Plaintiff's objections were due.

8

16-CV-1986-W(WVG)

As the Court noted above, were this simply a matter of untimely objections and privilege log production, the Court may have been amenable to finding Plaintiff had not waived any privilege or protection. However, the Court is troubled by what appears to be an attempt to hide the ball from the defense. If discovery is withheld based on any privilege or protection, such should be stated in a privilege log to provide the other side an opportunity to meet and confer and possibly challenge that claimed privilege.[4] Parties are not permitted to unilaterally decide that a privilege applies, withhold a document, not notify the other side, and instead produce a sanitized version of a then-existing responsive document at a later date. Here, the annotated map should have been included in a privilege log from the beginning regardless of whether a clean copy was going to be obtained. It was a document that existed at the time Defendants' RFPs issued, was responsive to those requests, and was in Plaintiff's possession. Plaintiff's admission that he believed he could print and produce a "clean" copy of the map only further troubles the Court. Even if Plaintiff had a clean copy of the map in his possession, *both* copies of the map would have been responsive. In that scenario, Plaintiff could withhold the annotated map, but only after following the proper procedure set forth in Rule 34. The clean copy of the map would not have absolved Plaintiff of this obligation with respect to an otherwise responsive document.

---

[4] Rule 34(a)(1) authorized Defendants to ask for responsive documents in Plaintiff's "possession, control, or custody." There is no dispute that the annotated map was in Plaintiff's possession, custody, and control at the time Defendants propounded their RFPs. And there is no dispute that it was in fact responsive. Accordingly, Plaintiff's had the affirmative obligation and duty under Rule 34(b)(2)(C) "*to alert other parties* to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Fed. R. Civ. P. 34 (Committee Notes on Rules—2015 Amendment) (emphasis added). The annotated map was a then-existing responsive document that was subject to Rule 34's produce-or-object provision. The "clean" copy of the map did not exist. Plaintiff withheld the annotated map without formal notice and forced Defendants to investigate the matter to discover the full breadth of the situation on their own.

Plaintiff had a responsibility to follow the proper protocol when asserting a privilege with respect to a responsive document that was in his possession. Plaintiff did not follow this procedure at all and capitulated and finally provided information about the nature of the document only after defense counsel pursued the matter and specifically asked for five categories of information that could help Defendants assess Plaintiff's claimed privilege. This was not Defendants' responsibility; Plaintiff should have provided this information *ab initio*. But it seems that Plaintiff provided this information only when he was backed into a corner as a result of not being able to re-print another copy of the map. This is troubling to the Court.

Lest it be argued that the transgressions here are trivial, they certainly are not. As the Advisory Committee notes to Rule 26 caution, "[t]o withhold materials without such notice [under Rule 26(b)(5)] is contrary to the rule, *subjects the party to sanctions under Rule 37(b)(2)*, and may be viewed as a waiver of the privilege or protection." *Burlington*, 408 F.3d at 1147 (quoting Rule 26(b)(5) advisory committee's note (1993 Amendments)) (emphasis added). Moreover, Plaintiff's attempts to produce a "clean" copy of the map and withhold the annotated copy run afoul of the spirit of the civil discovery. "The purpose of discovery is to provide a mechanism for making relevant information available to the litigants . . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." *Id.* at 1148-49 (quoting same). Here, Plaintiff did not attempt to use the discovery rules themselves a tactical weapon. Rather, he failed to comply with the rules and attempted to withhold the true nature of the annotated map until Defendants forced his hand. Rather than illuminate the privilege issue, Plaintiff muddied the waters, attempted mightily not to illuminate the nature of the document, and then grudgingly revealed its true nature after multiple follow-up attempts by defense counsel. This is not in line with either the letter or the spirit of the rules that govern the civil discovery process.

10

The Court finds that Plaintiff's compliance with the privilege log and objection provisions in Rules 26 and 34 was untimely. More importantly, the reason behind the untimely compliance is significant. Defense counsel had to extract the privilege log information from Plaintiff after his continued failure to correct his counsel's prior misrepresentation of the nature of the annotations, failure to produce a privilege log, and apparent intention to not produce the annotated map at all save for the fortuitous inability to reprint a "clean" copy from the Nike website. These factors exacerbate what would otherwise have been simple untimeliness. Thus, the second *Burlington* factor weighs heavily in favor of waiver.

The third *Burlington* factor—the magnitude of the document production—also favors waiver, as the document at issue consists of one page. Producing it would not be burdensome in any way. The fourth factor also favors waiver. There are no other particular circumstances of the litigation that make responding to discovery unusually hard. However, given that the annotated map is a single page, its disclosure is unusually easy. Moreover, the nature of the annotations themselves does not render their disclosure unusually hard or damaging. The annotations are benign and barely—if at all—reveal anything about the case. Rather, the annotations for the most part simply identify locations on the map that are obvious based on the map itself. And the only two notes the plaintiff's counsel made simply identify the locations of objects or events that are not particularly remarkable and reveal the locations of objects or events that Defendants most certainly already know about.[5]

---

[5] Because the annotations appear so trivial, the Court is perplexed why Plaintiff so vehemently seeks to withhold the seemingly trivial annotations on the map—other than the fact that they may technically be protected by the attorney-client privilege or work product doctrine, of course. However, not every fight deserves to be fought with the same fervor, and parties should apply discretion to discern which battle is actually worth it rather than fight every one for the sake of "the fight." This dispute appears to be precisely the type where some discretion could have avoided any dispute at all, this Court's involvement, and this Order.

**B. Plaintiff's Social Media Postings**

Defendants' RFP No. 18 asked for all of Plaintiff's social media postings dating back to 2010 without regard to subject matter or content. During the discovery conference, defense counsel agreed that this RFP was overbroad and stated a narrower RFP would be propounded. Accordingly, no further discussion on this matter is necessary, and the Court sustains Plaintiff's objection that RFP No. 18 is overbroad.

### IV. CONCLUSION

Plaintiff shall produce the unredacted annotated map no later than August 23, 2017.

**IT IS SO ORDERED.**

DATED: August 16, 2017

Hon. William V. Gallo
United States Magistrate Judge