1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11    ALTON JONES,                                    Case No.:  16-CV-1986-W(WVG)

12                                    Plaintiff,      **ORDER ON DISCOVERY DISPUTE**

13    vs.                                             **(PLAINTIFF'S RFP (SET 4) NOS. 41-**
                                                      **49 AND RFI NO. 1)**
14    U.S. BORDER PATROL

15    AGENT GERARDO

16    HERNANDEZ *et al.*,

17                                    Defendants.

18    ─────────────────────────────

      AND RELATED COUNTERCLAIMS
19

20         This discovery dispute involves Plaintiff's Requests for Production of Documents

21    (Set 4) ("RFPs") Nos. 41 through 49 and his Request for Inspection ("RFI") No. 1.  The

22    parties have provided the Court detailed synopses of their positions,[1] which the Court

23    finds are sufficient for resolution without argument or additional briefing.  *See* S.D. Cal.

24    L. Civ. R. 7.1(d)(1).  Defendants' objections to RFP Nos. 41, 42, and 44 through 49 are

25    OVERRULED as moot.  With respect to RFP No. 43 and RFI No. 1, Defendants' lack-

26    of-proportionality objections are SUSTAINED.

27    ─────────────────────

28    [1] Attached hereto as Attachment A.

                                               1

The Court need not reach whether the subject matter of RFP Nos. 41, 42, and 44 through 49 are discoverable because, as a threshold matter, any disputes over these RFPs are moot. In his declaration, Rodney S. Scott—the Chief Patrol Agent in charge of the U.S. Border Patrol's San Diego Sector—declares under penalty of perjury that Border Patrol personnel have conducted a search and have not uncovered any documents responsive to RFP Nos. 41, 42, and 43 through 49. Agent Scott also declares that Defendants will supplement their responses to produce any responsive documents that are discovered in the future. Given Agent Scott's representations, there simply is no dispute before the Court—Defendants have conducted a search, have found nothing, and have sufficiently responded to the RFPs in question. As a result, the objections are moot despite Plaintiff's continued efforts to obtain documents that—accordingly to Agent Scott—do not exist to the best of his knowledge. It according makes no sense to entertain disputes over, issue a protective order for, or compel the production of discovery that does not exist. As a result, Defendants' objections are OVERRULED as moot, and they need not further respond to RFP Nos. 41, 42, and 44 through 49 unless responsive documents are discovered in the future.

With respect to RFP No. 43, the Court need not reach Defendants' invocation of the law enforcement privilege because, as a threshold matter, this RFP is not proportional to the needs of the case given the uncomplicated nature of the case, the discovery Defendants have produced to date, and Agent Scott's representations about the sensitive nature of the responsive document. Defendants' lack-of-proportionality objection to RFP No. 43 is SUSTAINED.

Finally, through RFI No. 1, Plaintiff seeks to enter, view, and inspect the "control center" where agents operate RVSS cameras. As with RFP No. 43, RFI No. 1 is not proportional to the needs of the case and is even less so given what Plaintiff seeks to discover from the inspection, the intrusive nature of the request, and the *much* greater prospect that irrelevant yet highly sensitive information will be gleaned from the

inspection. This request goes beyond production of a cold document but seeks to physically enter the nerve center where agents run a highly-sensitive camera system that watches over the United States-Mexico border. This case does not justify such an intrusive, sensitive inspection. Defendants' lack-of-proportionality objection to RFI No. 1 is SUSTAINED.

**IT IS SO ORDERED.**

DATED: January 5, 2018

Hon. William V. Gallo
United States Magistrate Judge

# ATTACHMENT A



Below is Plaintiff's synopsis of the pending dispute regarding camera evidence.  As the Court is likely aware, the government produced a recording from a Border Patrol RVSS camera system that captured some, but not all, of the incident in this case.  Much of the video is grainy and low resolution, making it difficult to determine what occurred, and most of the critical events in this case occur in a known blind spot of the RVSS system.  Plaintiff has sought discovery about the camera system in order to understand the video and radio evidence produced in this case and test the government's factual assertions that the camera system was used "properly."  Dkt. 68-3 (Decls. of Mike Apple and Jose Cruz I/S/O Mot. to Dismiss or for Summ. J.).

**Apple Deposition Instructions Not to Answer**
At the deposition of Mike Apple on December 20, the government's counsel instructed Mr. Apple not to answer basic questions regarding the RVSS system.  The Court will recall that, in its written submission and at the hearing regarding the ongoing dispute over Plaintiff's right to conduct a Rule 30(b)(6) deposition of the party that sued him, the government stated that Plaintiff should not be entitled to a Rule 30(b)(6) deposition regarding the cameras in part because "Mike Apple will be able to testify about the RVSS camera or cameras that could see the area of the incident . . . ."  Gov't Brief at 2, Nov. 16, 2017.

The government has now entirely shifted its position, and now claims that *any*  information regarding the capabilities of the RVSS system, and even the existence of documents about the system, is absolutely privileged.  At the deposition, Plaintiff's counsel (some of whom had travelled out of town for the deposition) were prevented from asking entire lines of questioning related to the camera's basic functions.  Mr. Apple was instructed not to answer questions seeking (a) "who manufactures the camera" (Apple Depo. Tr. 32:10-15); (b) "[w]hat documents" show "how to operate the RVSS" (id. 34:11-23); (c) "what actions or practices constitute proper use of the equipment" (id. 35:3-10); and (d) whether there are "written policies regarding the operation of the cameras" (id. 37:16-25).  The government is seeking to block discovery that may confirm or deny its own factual claims regarding proper use of the system and the existence of documents regarding the system. (As to the identity of the manufacturer, Plaintiff's counsel later learned the government has not even kept that confidential, so it cannot be subject to any privilege.  *Kelly v. City of San Jose* , 114 F.R.D. 653, 661 (N.D. Cal. 1987).)

After these objections, the deposition was paused while counsel met and conferred about the scope of the privilege the government claims.  Plaintiff's counsel provided authorities demonstrating that the government's privilege claims were wrong, because the government has not made a threshold showing that the specific information requested will unduly hinder Border Patrol operations if provided subject to a protective order.  Plaintiff's counsel agreed to provide the government additional time to consider these authorities and speak with the agency regarding the appropriate scope of the law enforcement investigatory privilege, and government counsel agreed that Mr. Apple would be available for a continued deposition.  At a further meet and confer following another deposition on December 22, the government simply repeated the same overbroad objection it had already made.  The government also made both relevance and proportionality objections that are both wrong (because the camera evidence is critical in this case) and improper (because these are not bases for an instruction not to answer).

**Plaintiff's RFPs Set No. 4**

The parties also met and conferred regarding the government's responses to Plaintiff's Requests for Production (Set 4). RFPs Set 4 comprise 9 tailored RFPs seeking policies, manuals, and other documents sufficient to show certain technical aspects of the camera and radio systems. The government's response identified just a single document and withheld it on the basis that it is "law enforcement sensitive." The privilege claim is wrong primarily because the government has never, despite being asked repeatedly, offered any explanation of why disclosure in this case, to this litigant, under a protective order, would compromise any government interest. *Kelly*, 114 F.R.D. at 670. The government has also not explained whether sensitive information may be redacted to protect any government interest. The government's proportionality objection rings false given that (a) the amount in controversy is more than $1 million and (b) the government has offered no compromise position to alleviate any burden it faces.

**Other Discovery Relating to the Camera System**

Finally, the government suggested during a meet and confer that it wishes to raise the issue of Plaintiff's Request for Inspection of the RVSS camera system, which was served on December 13 and to which the government has not yet responded. The dispute is, of course, not ripe for resolution as Plaintiff has not had a chance to evaluate the government's claims as to why an inspection would violate any privilege. Plaintiff served the Request for Inspection as part of a diligent effort to seek a limited set of information regarding the camera system through various avenues, in the hope that the government would attempt in good faith to determine which of these avenues would serve the needs of this case while intruding as minimally as possible on Border Patrol operations. The government's overbroad privilege claim has precluded that effort.

Plaintiff respectfully requests the opportunity to submit a brief regarding the appropriate scope of law enforcement privilege. Please let me know if there is any way we can further aid Judge Gallo's consideration of the dispute.

Hunter Hayes





### 16cv1986 Jones case: USA request for protective order re P 's requests for sensitive law enforcement information

**Bettwy, Samuel (USACAS)**   to: rts.gov                    12/28/2017 12:00 PM

Cc: "Wallace, Dave (USACAS)", "Hayes, Hunter"      , "XT McKinney, Zoe"

TO:  The Honorable William V. Gallo

THRU: ████████████████████

DATE: December 28, 2017

RE: *Jones v. Hernandez* , No. 16cv1986 W (WVG)

United States' request for protective order re Plaintiff's requests for sensitive law enforcement information

*Summary* . The United States seeks protection from Plaintiff's persistent attempts, over the last three months, to obtain irrelevant and disproportional information about sensitive law enforcement techniques, namely information about the capabilities and vulnerabilities of Border Patrol's surveillance operations at the international border, including but not limited to video surveillance (RVSS) and radio communications systems. We have produced to Plaintiff's counsel the declaration of San Diego Sector Chief Border Patrol Agent Rodney Scott in which he states that disclosure of the information sought would compromise Border Patrol's mission to defend against trafficking and smuggling of aliens, drugs, other contraband, and terrorist weapons (*see*  attached Scott Declaration, paras. 11.a. & 11.b.).


*Lack of relevance* . Plaintiff's counsel's explanation to us of the relevance of the information sought is incomprehensible, so we are unable to re-state it here. Given their statement in the pending dispute over their Rule 30(b)(6) Notice, it seems that they're hoping to build some far-fetched cover-up conspiracy theory, but after extensive discovery, it is clear that there was nothing to cover up. The United States has already disclosed ample information that is sensitive, because it is relevant to claims and defenses in this case, including:


- name and approximate location of the sensor near the all-weather road that Jones activated
- names and locations of operational areas where the incident occurred
- name, title and duty assignment of all agents on duty at the Imperial Beach Border Patrol station on the relevant days [Response to Interrogatory No. 1]
- location of cameras that could potentially see the general area at issue (for which, we have disclosed to Plaintiff, there are no recordings)
- location of the camera that was pointed at and recording the incident of Jones' running on the all-weather road
- videotape that was retained, which reveals blind spots in the RVSS camera
- procedure used to record, download and burn to DVD the RVSS videotape
- all radio calls that were recorded during the time of the incident
- identities of agents who can be heard on the radio
- radio procedures that were used in the calls relevant to this incident such as what was being done to overcome poor radio signal (e.g., switching to "direct" to reach a high point)

*Disproportional*. Preserving/asserting the law enforcement privilege has required that Border Patrol personnel expend, to date, over 150 hours to research and review responsive documents, and that process remains ongoing. Border Patrol personnel search for and retrieve responsive documents and then Chief Scott reviews them to determine whether their disclosure would compromise the Border Patrol's mission. The process remains ongoing because Plaintiff's counsel are seeking material that goes beyond what is in Border Patrol's possession.

*The law enforcement privilege*. If this Court were to reach consideration of the law enforcement privilege, it would weigh and compare the interests of the Department of Homeland Security (which interests coincide with the security interests of the entire nation) in protecting its border surveillance methods against the interests of Plaintiff to support what appears to be an outlandish conspiracy theory for which no basis has been developed through discovery. Courts in the Ninth Circuit have recognized the privilege, and courts nationwide consistently refuse to compel disclosure. *See Shah v. Department of Justice*, No. 14-cv-624, 2015 WL 427916, at *5 (D. Nev. Feb. 2, 2015) ("courts have recognized that the [law enforcement investigatory] privilege may be applied in order to ensure the efficacy of investigative techniques in future cases.") (APA case); *Benhoff v. DOJ*, No. 16cv1095 GPC (JLB), 2017 WL 840879, at *4-5 (S.D. Cal. Mar. 03, 2017) (APA case); *Perez v. Blue Mountain Farms*, No. 13-CV-5081-RMP, 2015 WL 11112414, at *3 (E.D. Wash. Aug. 10, 2015) (motion to compel). *See also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007) (APA-type action); *Azmy v. U.S. Department of Defense*, 562 F. Supp. 2d 590, 601-02 (S.D.N.Y. 2008) (FOIA case), *Tri-State Hosp. Supply Corp. v. United States*, 2005 WL 3447890 at *9 (S.D. Fla. 2005) (motion to compel); *Tuite v. Henry*, 181 F.R.D. 175, 180 (D.D.C. 1998) (motion to compel).

*Procedural history*. The United States first asserted the law enforcement privilege at the September 28, 2017 deposition of Border Patrol Agent McFarlin. We instructed Agent McFarlin not to answer, and we proposed to Plaintiff's counsel to call Your Honor at that time to reach an early resolution, *but Plaintiff's counsel declined*. [McFarlin Tr. 46-49 (attached to our Nov. 16, 2017 position statement (.pdf at 101)).]

About two weeks later, on October 10, 2017, the issue arose again at the deposition of Agent Kulakowski. We once again instructed Agent Kulakowski not to answer, and we again proposed to call Your Honor to resolve the issue: Plaintiff's counsel at first agreed and then *decided to withdraw the question*. [Kulakowski Tr. 205-07 (attached to our Nov. 16, 2017 position statement (.pdf at 319-20)).]

On October 23, 2017, the issue arose again with respect to Plaintiff's Rule 30(b)(6) Notice, which dispute is pending before Your Honor.

On November 15, 2017, Plaintiff served RFP #4, seeking extensive information about the capabilities and vulnerabilities of Border Patrol's surveillance systems. In our November 16, 2017 position statement (at 5 n.3), we attached RFP #4 to flag the issue. On December 15, 2017, we responded to Plaintiff's RFP #4, invoking the privilege and presenting Chief Scott's declaration, which will likely be supplemented, but which contains a general explanation that information about the capabilities and vulnerabilities of the RVSS and radio communication systems would compromise the law enforcement mission of the Border Patrol to surveil and protect our border (*see* attached Scott Declaration, paras. 11.a. & 11.b.).

On December 13, 2017, Plaintiff's counsel served us with a request to inspect Border Patrol's operations center where video surveillance is conducted (*see* attached Request to Inspect). We have informed Plaintiff's counsel that we will be objecting to their request.

On December 20, 2017, at the deposition of Mike Apple, Plaintiff's counsel continued to seek sensitive law enforcement information, so we agreed that, given all of the different, unresolved manifestations of this dispute, his deposition would remain open until its resolution. [Apple Tr. 32, 34, 37, 69.]

On December 22, 2017 (at the conclusion of Plaintiff's deposition of Agent Herrera), counsel met and conferred and then called Your Honor's chambers and left a voicemail message.

*Conclusion*. The United States is seeking protection from all further requests for information about the capabilities and vulnerabilities of Border Patrol's surveillance operations at the international border, including but not limited to video surveillance and radio communications systems. We contend that Plaintiff's counsel's Rule 30(b)(6) Notice, their RFP #4, their request to inspect the control center where video surveillance occurs, and their questions at multiple depositions, all seek sensitive law enforcement information about investigative techniques that is not relevant to any claim or defense in this case. Their requests are also disproportional to the needs of this case, especially considering the time that has been spent and has yet to be spent on this process. The United States also asserts the law enforcement privilege, because disclosure of the information sought would compromise the Border Patrol's mission to detect and prevent the illegal trafficking of people and contraband and the entry of terrorists and terrorist weapons into the United States.

Respectfully,

s/ *David B. Wallace*

David. B. Wallace, AUSA

s/ *Samuel W. Bettwy*

Samuel W. Bettwy, AUSA

Assistant U.S. Attorneys

880 Front St., Rm. 6293

San Diego, CA 92101-8893

Counsel for all Defendants

cc: Plaintiff's counsel Mr. C. Hunter Hayes and Ms. Zoë McKinney



 EX-12-15-17 Scott declaration.pdf EX-Jones 12-13-17 request for Inspection.pdf

ADAM BRAVERMAN
United States Attorney
DAVID B. WALLACE
Assistant U. S. Attorney
California Bar No. 172193
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
REBECCA G. CHURCH
Assistant U.S. Attorney
California Bar No. 259652
KYLE W. HOFFMAN
Assistant U.S. Attorney
California Bar No. 176095
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel: (619) 546-7669 / 7125 / 7721 / 7651
Fax: (619) 546-7751

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTON JONES,<br><br>               Plaintiff,<br><br>    vs.<br><br>U.S. BORDER PATROL AGENT GERARDO HERNANDEZ, et al.,<br><br>               Defendants. | Case No. 16cv1986 W (WVG)<br><br><br>**DECLARATION OF RODNEY S. SCOTT** |
| UNITED STATES OF AMERICA,<br><br>               Counter-Claimant,<br><br>    vs.<br><br>ALTON JONES,<br><br>               Counter-Defendant. | |

I, Rodney S. Scott, do hereby declare:

1. I am employed by the U.S. Border Patrol as Chief Patrol Agent, San Diego Sector. I have held this position since November 2017.

2. I make this declaration based upon my own personal knowledge and review of materials collected thus far in response to Plaintiff's Fourth Set of Requests for Production of Documents dated November 15, 2017.

3. I was asked to review the collected documents and determine whether disclosure of the documents would compromise the ability of the U.S. Border Patrol to perform its mission.

4. In general, the mission of the U.S. Border Patrol is to detect, apprehend and/or prevent illegal aliens, terrorists and terrorist weapons from entering the United States and to prevent the illegal trafficking of people and contraband.

5. It is paramount that the U.S. Border Patrol's surveillance capabilities, tactics, and related technology use and deployment, as well as the related limitations and vulnerabilities of such, not be disclosed outside the agency. Disclosure would compromise and degrade agents' abilities in accomplishment of U.S. Border Patrol's mission by personnel who are responsible for surveilling and patrolling 6,000 miles of Mexican and Canadian international land borders, and coastal waters, including the island of Puerto Rico.

6. If transnational criminal organizations, terrorists, and others who seek to penetrate our borders can anticipate and counter our patrol and surveillance infrastructure, it will compromise the mission of the U.S. Border Patrol and, in turn, our public safety and national security.

7. In this matter, Plaintiff has made the following requests for production of documents:

**Request for Production No. 41:**

The operating manual for the Remote Video Surveillance System ("RVSS").

///

**Request for Production No. 42:**

DOCUMENTS sufficient to show the technical capabilities, product names, storage capacity, resolution, and transmission channels of any hardware and software that is part of the RVSS.

**Request for Production No. 43:**

DOCUMENTS sufficient to show Border Patrol policies relating to the operation of RVSS cameras by Border Patrol agents.

**Request for Production No. 44:**

DOCUMENTS sufficient to show Border Patrol policies relating to RVSS data storage.

**Request for Production No. 45:**

DOCUMENTS and COMMUNICATIONS relating to blind spots in the coverage of RVSS Camera 2 located near Border Field State Park, specifically including a blind spot near the area known as South Park. 37109112.2 -5- 16-cv-1986-W (WVG)

**Request for Production No. 46:**

DOCUMENTS sufficient to show Border Patrol policies relating to Border Patrol radio communication systems.

**Request for Production No. 47:**

DOCUMENTS sufficient to show Border Patrol policies relating to the recording of radio communications.

**Request for Production No. 48:**

DOCUMENTS sufficient to show the operation of any hardware or software system used by the Border Patrol related to record radio communications.

//
///
///

**Request for Production No. 49:**

> DOCUMENTS describing, referring to, or constituting Border Patrol policies regarding when an agent may or must switch his or her radio to any setting, such as "direct communications," under which radio communications are unrecorded.

8. A thorough search of U.S. Border Patrol national and local level documents has been conducted, and a search for any other responsive documents is ongoing. If additional responsive documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

9. I have reviewed documents submitted to me.

10. The U.S. Border Patrol has maintained the confidentiality of the collected responsive documents. While the existence of some of the specified technology is public knowledge, the type of information and level of detail requested is not publicly available due to the operationally sensitive nature and harm to U.S. Border Patrol operations a disclosure would cause.

11. Accomplishment of the mission of the U.S. Border Patrol would be threatened by disclosure of the documents and similar documents as explained below:

a. *RVSS*. Documents related to our RVSS system must not be disclosed as a matter of agent safety, as well as to protect the integrity of our law enforcement tactics, techniques, and procedures. Any such disclosure outside of U.S. Border Patrol can potentially expose technology limitations, capability gaps, and vulnerabilities as well as allow for reverse engineering and counter operations and tactics that can then be used by criminal organizations to gain entry into, and commit other crimes against the United States. My highest priority as Chief Patrol Agent is to ensure the safety of our agents, while carrying out the mission of the U.S. Border Patrol; disclosing information related to our RVSS would create an unnecessary risk for the agents and to our mission.

///

///

**Request No. 41**. The operating manual for the Remote Video Surveillance System ("RVSS").

U.S. Border Patrol does not have an Operating Manual for the RVSS. If such a manual is located after I sign this declaration, I will review it and amend this declaration if necessary.

**Request No. 42**. DOCUMENTS sufficient to show the technical capabilities, product names, storage capacity, resolution, and transmission channels of any hardware and software that is part of the RVSS.

U.S. Border Patrol does not have any such documents. If any such documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

**Request No. 43**. DOCUMENTS sufficient to show Border Patrol policies relating to the operation of RVSS cameras by Border Patrol agents.

The U.S. Border Patrol has a standard operating procedure for San Diego Sector Border Patrol. It is law enforcement sensitive and should not be disclosed because it reveals law enforcement tactics, techniques, and procedures and exposes technology limitations, capability gaps, and vulnerabilities and allows for reverse engineering and counter operations and tactics.

**Request No. 44**. DOCUMENTS sufficient to show Border Patrol policies relating to RVSS data storage.

U.S. Border Patrol does not have any such policies. If any such documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

**Request No. 45**. DOCUMENTS and COMMUNICATIONS relating to blind spots in the coverage of RVSS Camera 2 located near Border Field State Park, specifically including a blind spot near the area known as South Park.

The U.S. Border Patrol does not have such documents and communications. If any such documents/communications are located after I sign this declaration, I will review them and amend this declaration if necessary.

b. *Radio communications systems*. Documents related to our radio communications system must not be disclosed as a matter of agent safety, as well as to protect our law enforcement tactics, techniques, and procedures. Any such disclosure outside of U.S. Border Patrol can potentially expose technology limitations, capability gaps, and vulnerabilities as well as allow for reverse engineering and counter operations and tactics that can then be used by criminal organizations to gain entry into, and commit crimes against the United States. Any broadcast through our radio communications system is secure encrypted communication because it is law enforcement sensitive information. My highest priority as Chief Patrol Agent is to ensure the safety of our agents while carrying out the mission of the U.S. Border Patrol, and disclosing information related to our radio communications system would create an unnecessary risk for them and our related operations.

**Request No. 46**. DOCUMENTS sufficient to show Border Patrol policies relating to Border Patrol radio communication systems.

No such U.S. Border Patrol documents exist. If any such documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

**Request No. 47**. DOCUMENTS sufficient to show Border Patrol policies relating to the recording of radio communications.

No U.S. Border Patrol policies exist. If any such documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

**Request No. 48**. DOCUMENTS sufficient to show the operation of any hardware or software system used by the Border Patrol related to record radio communications.

No U.S. Border Patrol documents exist. If any such documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

**Request No. 49.** DOCUMENTS describing, referring to, or constituting Border Patrol policies regarding when an agent may or must switch his or her radio to any setting, such as "direct communications," under which radio communications are unrecorded.

No U.S. Border Patrol documents exist. If any such documents are located after I sign this declaration, I will review them and amend this declaration if necessary.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of December 2017.

RODNEY S. SCOTT
Chief Patrol Agent, San Diego Sector
U.S. Border Patrol

Mitra Ebadolahi (SBN 275157)
mebadolahi@aclusandiego.org
David Loy (SBN 229235)
davidloy@aclusandiego.org
Zoë McKinney (SBN 312877)
zmckinney@aclusandiego.org
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 232-2121
Facsimile: (619) 232-0036

Luis Li (SBN 156081)
luis.li@mto.com
Tamerlin J. Godley (SBN 194507)
tamerlin.godley@mto.com
Lauren C. Barnett (SBN 304301)
lauren.barnett@mto.com
C. Hunter Hayes (SBN 295085)
hunter.hayes@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Plaintiff/Counter-Defendant
ALTON JONES

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTON JONES,<br><br>        Plaintiff,<br><br>    vs.<br><br>U.S. BORDER PATROL AGENTS GERARDO HERNANDEZ, JODAN JOHNSON, DAVID FAATOALIA, JOSEPH BOWEN, and JOHN KULAKOWSKI, each sued in their individual capacities; UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>        Defendants.<br><br>UNITED STATES OF AMERICA,<br><br>        Counter-Claimant,<br><br>    vs.<br><br>ALTON JONES,<br><br>        Counter-Defendant. | Case No. 16-cv-1986-W (WVG)<br><br>**PLAINTIFF AND COUNTER-DEFENDANT ALTON JONES'S REQUESTS FOR INSPECTION FROM DEFENDANT AND COUNTER-CLAIMANT UNITED STATES OF AMERICA**<br><br>Judge: Hon. Thomas J. Whelan |

PLAINTIFF AND COUNTER-DEFENDANT'S REQUESTS FOR INSPECTION PROPOUNDED TO DEFENDANT AND COUNTER-CLAIMANT UNITED STATES OF AMERICA

PROPOUNDING PARTY:   PLAINTIFF & COUNTER-DEFENDANT ALTON
                     JONES
RESPONDING PARTY:    DEFENDANT & COUNTER-CLAIMANT UNITED
                     STATES OF AMERICA

      Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Alton Jones hereby requests that Defendant and Counter-Claimant United States of America ("USA") permit Plaintiff to inspect the places and tangible things listed below within thirty (30) days of service of these Requests.

## GENERAL INSTRUCTIONS

1.     PLAINTIFF incorporates by reference as if fully set forth herein Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of California. This Request seeks responses and DOCUMENTS and things to the full extent permitted by the Federal Rules of Civil Procedure and Local Rules.

2.     If YOU object to an inspection on grounds of privilege, specify with particularity the nature of the claimed privilege so as to enable the claim of privilege to be evaluated and, if necessary, adjudicated.

3.     The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

4.     The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompasses both "and" and "or." Words in the masculine, feminine, or neutral form shall include each of the other genders.

37292525.1           16-cv-1986-W (WVG)

PLAINTIFF AND COUNTER-DEFENDANT'S REQUESTS FOR INSPECTION PROPOUNDED TO DEFENDANT AND COUNTER-CLAIMANT UNITED STATES OF AMERICA

**DEFINITIONS**

1.    "CAMERA 2" is a camera located near Border Field State Park, pointing eastward, from which video footage was produced in this case.

**REQUESTS FOR INSPECTION**

**Request for Inspection No. 1:**

The control center from which CAMERA 2 is operated, and from which CAMERA 2 footage may be viewed.  This control center is located, on information and belief, in the Chula Vista Border Patrol Station.


DATED:  December 13, 2017          ACLU FOUNDATION OF SAN DIEGO &
                                                      IMPERIAL COUNTIES
                                                          MITRA EBADOLAHI
                                                          DAVID LOY
                                                          ZOE MCKINNEY

                                                      MUNGER, TOLLES & OLSON LLP
                                                          LUIS LI
                                                          TAMERLIN J. GODLEY
                                                          LAUREN C. BARNETT
                                                          C. HUNTER HAYES


                                          By:    _____*/s/ C. Hunter Hayes*_____
                                                      C. HUNTER HAYES
                                                  Attorneys for Plaintiff ALTON JONES

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 560 Mission Street, 27th Floor, San Francisco, CA 94105.

On December 13, 2017, I served true copies of the following document(s) described as:

**PLAINTIFF AND COUNTER-DEFENDANT ALTON JONES'S REQUESTS FOR INSPECTION FROM DEFENDANT AND COUNTER-CLAIMANT UNITED STATES OF AMERICA**

on the interested parties in this action as follows:

David B. Wallace
Dave.Wallace@usdoj.gov
Samuel William Bettwy
samuel.bettwy@usdoj.gov
United States Attorney's Office
880 Front Street
Room 6293
San Diego, CA 92101
(619) 546-7669
Fax: (619) 546-7751
Attorneys for Defendants/Counter-Claimant

**BY E-MAIL:** I served the document electronically by e-mailing the document to the individuals on the attached service list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 13, 2017, at San Francisco, California.

_/s/ Crystal Wu_
Crystal Wu