# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTON JONES,<br><br>                        Plaintiff,<br>vs.<br><br>U.S. BORDER PATROL AGENT GERARDO HERNANDEZ *et al.*,<br><br>                       Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 16-CV-1986-W(WVG)<br><br>**ORDER ON DISCOVERY DISPUTE (FRCP 30(b)(6) DEPOSITION NOTICE; FOURTEEN TOPICS)** |

    This discovery dispute involves each of fourteen topics in Plaintiff's Rule 30(b)(6) deposition notice. The Court convened a telephonic discovery conference on November 9, 2017, and the parties filed briefing on November 16, 2017. The Court rules as set forth below.

/ / /

/ / /

/ / /

1

1. As an initial matter, the parties dispute whether Rule 30(b)(6) depositions are proper in this case at all. As another district court recently explained,

> [T]he discovery device created by Rule 30(b)(6) was intended to assist both sides in the deposition process. Previously, officers or managing agents of a corporation who were deposed might use a technique of gamesmanship known as "bandying," in which each witness in turn honestly disclaims knowledge of facts that are known to other persons in the organization and thereby to the organization itself. This technique increased the expense and burden to the party seeking appropriate discovery. Rule 30(b)(6) is intended to curb that practice. In addition, organizations at times were subjected to an unnecessarily large number of their officers and agents being deposed by a party who was uncertain of who in the organization has knowledge regarding some specific matter at issue. The Advisory Committee observed that the burden placed by this rule on a party required to produce a witness or witnesses "is not essentially different from that of answering interrogatories under Rule 33, and is in any case lighter than that of an examining party ignorant of who in the corporation has knowledge."

*Updike v. Clackamas Cty.*, No. 15-CV-723-SI, 2016 U.S. Dist. LEXIS 2783, at *4-5 (D. Or. Jan. 11, 2016) (quoting Fed. R. Civ. P. 30, Advisory Committee Notes (1970 Amendments)). Here, the risk of the government defendants bandying is greatly diminished given that they have identified specific individuals who can testify about various topics. As a result, Plaintiff need not depose a line of witnesses to find one who is knowledgeable on a subject. But the question remains whether depositions under this Rule are appropriate in this case.

Defendants contend Rule 30(b)(6) depositions are not appropriate in "garden variety tort" cases such as this case. However, what may otherwise be a garden variety tort case *can* morph into a more serious one when the alleged tortfeasor is the government and its agents acting under color of law. For example, a state prisoner assaulted by another prisoner may only have a common law battery claim against his attacker in state court, but he may pursue a federal civil rights action for the same battery under 42 U.S.C. § 1983 if his attacker is a prison guard employed by the state.

Here, though Defendants' alleged underlying tortious conduct in part involved battering Plaintiff, the nature of Plaintiff's *Bivens* claims elevate this case out of the "garden variety tort" realm. That being said, Plaintiff fails to articulate a compelling reason for Rule 30(b)(6) depositions here beyond the need to bind the government.

Nonetheless, the plain language of Rule 30 permits such depositions in actions against a government agency. *See* Fed. R. Civ. P. 30(b)(6) ("In its notice or subpoena, *a party may name as the deponent . . . a governmental agency*, or other entity and must describe with reasonable particularity the matters for examination.") (emphasis added). And Defendants have not directed the Court to any on-point authority that precludes such depositions here. The Court finds that—as a general matter—Rule 30(b)(6) depositions are an appropriate, available discovery tool in such cases and turns to the fourteen disputed topics in the deposition notice.

2. Topic 1 generally seeks the structure and chain of command of the Imperial Beach Border Patrol station. Defendants have already produced extensive, detailed lists of Border Patrol personnel who were assigned to shifts around the events of this case as well as deposition testimony of various agents and supervisors who have offered evidence responsive to this topic. The lists and testimony identify supervisors and names of the agents who work under each supervisor. Plaintiff contends these responses are insufficient because he seeks the supervisors' roles and responsibilities rather than actual staffing, which Defendants' interrogatory responses provided. Given this narrow stated purpose of Topic 1, the Court finds conducting a Rule 30(b)(6) deposition on this topic to be overbroad and overly burdensome as a result.

Plaintiff also contends that the "reasonableness of Plaintiff's detention is critical in this case and requires discovery into the roles and actions *of the supervisors involved*." (emphasis added). However, Plaintiff's reasoning does not reflect the language of Topic 1. While Plaintiff contends this topic seeks the roles of supervisors involved in this case, it actually seeks far more than the roles of only the supervisors involved in

this case. In reality, this topic is a broad request for the entire chain of command of the IB Station because it covers agents and supervisors who were not in any way involved in the underlying events of this case or who were off duty during those events. It also seeks to uncover the number supervisors at the IB Station and the number of agents who report to each supervisor. This topic thus exceeds the narrow purpose stated in Plaintiff's brief and appears to be a foray into the operational structure of the IB Station at large. Additionally, because Plaintiff has known the identity of every supervisor and agent who was on duty during the relevant timeframe, he could have deposed those specific persons.[1] Moreover, it is unclear, and thus vague, whether Plaintiff seeks to ascertain the "role and action" taken by a supervisor who was involved in the event at the center of this case or if he generally seeks the "role and action" of individual supervisors as they perform their day-to-today duties. However, regardless of which interpretation Plaintiff intended, the need for a Rule 30(b)(6) witness is unjustified and additionally overly burdensome. The Court finds Topic 1 seeks irrelevant information and is overly burdensome given its overbroad nature. A Rule 30(b)(6) deposition is also not appropriate for what Plaintiff seeks to accomplish. The Court accordingly GRANTS Defendants' request for a protective order as to Topic 1.

    3. Plaintiff provides the same explanation for Topic 2, which seeks extensive, detailed information about the conditions of his detention at the IB Station. Such detailed factual information includes actions taken in response to his request for an attorney, his request for medical attention, and the activities of every agent who was on duty with respect his detention.[2] The Court finds Plaintiff's desire to gather this detailed factual information through a Rule 30(b)(6) deposition rather puzzling given

---

[1] Any risk of bandying could have been reduced through written discovery that narrowed the list of supervisors and agents who came in contact with Plaintiff.

[2] It also seeks the identities of every agent who was on duty during the relevant time period. As stated above, Defendants have already produced this information.

4

that only individual percipient witnesses would have such detailed, eyewitness-based knowledge. Rule 30(b)(6) deponents do not necessarily testify based on personal knowledge, but the nature of this topic requires the deponent to have intricate personal knowledge or to personally investigate and interview an unknown number of percipient witnesses in detail and then testify about the personal experiences of multiple witnesses. This deponent would then potentially "bind" the government going forward on nuanced factual events in which the deponent was not involved. However, when the identities of percipient witnesses are readily available, no risk of bandying exists, and these individual percipient witnesses are the proper deponents. Thus, Topic 2 does not make sense in the context of a Rule 30(b)(6) deposition, and Plaintiff's explanation is unpersuasive. The Court GRANTS Defendants' request for a protective order with respect to this topic.

4. Through Topic 3, Plaintiff seeks to depose a Rule 30(b)(6) witness about the Border Patrol's general practices in reporting cases for investigation and possible prosecution. Plaintiff has deposed SIG Agent Larry Hayes on this topic. The Court GRANTS Defendants' request for a protective order since Plaintiff has deposed Agent Hayes and others and has been provided the SIG activation memorandum.

5. Similarly, Topic 4, which contains three subparts, seeks to depose a government representative about Plaintiff's own detention and the ultimate decision to release him without charges. Plaintiff contends: "The government has asserted that the decision not to prosecute Plaintiff was simply an 'act of grace,' but other evidence suggests that, in fact, no assault occurred. Plaintiff is entitled to test these assertions . . . ." However, Plaintiff fails to explain what "other evidence suggests" he did not assault Agent Johnson. It is also unclear how a Rule 30(b)(6) deposition would help him test Defendants' assertions more effectively than depositions of the agents who were actually involved in the charging decision-making process. Testing Defendants' assertions regarding whether Plaintiff assaulted Agent Johnson or about

Defendants' decision to forgo prosecution is appropriately done through depositions of the individuals involved in the initial encounter (they can describe what actions were or were not taken) or the prosecution decision-making process (they can describe the reasoning behind the decision to decline prosecution)—not a Rule 30(b)(6) deposition. Based on the first-hand accounts of these percipient witnesses, a jury can decided whether Plaintiff assaulted Agent Johnson and whether the decision to decline prosecution was an "act of grace." An institutional Rule 30(b)(6) deposition can provide nothing to help the jury resolve these questions. The Court finds that a Rule 30(b)(6) deposition is not an appropriate discovery tool for this topic when the identities of percipient witnesses are known. A Rule 30(b)(6) witness here will necessarily be required to testify about the actions and observations of other individuals who are far better suited to testify about their own actions and experiences. The Court GRANTS Defendants' request for a protective order as to Topic 4.

6. By Topic 5, Plaintiff seeks to depose a Rule 30(b)(6) witness on "Border Patrol policies in effect in August 2014, and training provided to agents concerning, stops, detentions, arrests, searches, seizures, transports, and use of force."[3] To date, Defendants have produced extensive responsive documentation in discovery.[4] The

---

[3] Contrary to Defendants' assertion that Plaintiff's "*contention is pretextual, because there are no allegations of negligence in the complaint*" (emphasis in original), the Third Amended Complaint expressly contains a negligence claim against the United States. (Doc. No. 72 at 18-19.) Under California law, official government policies and manuals are relevant to negligence claims. *Lugtu v. Cal. Highway Patrol*, 28 P.3d 249, 259 (Cal. 2001); *Minch v. Cal. Highway Patrol*, 44 Cal. Rptr. 3d 846, 855 (Cal. Ct. App. 2006). That being said, Plaintiff's negligence claim only relates to the agents' use of force against him—not his detention, arrest, seizure, search, or transport.

[4] Defendants have produced over 260 pages of reports and policies, which include the following: Hold Rooms and Short Term Custody policy; Acting Commission's Message: Use of Force; USBP Use of Force Policy, Guidelines and Procedures Handbook; CBP National Standards on Transport, Escort, Detention, and Search; CBP Short-Term Detention Standards and Oversight; GAO Report on Short-Term Holding

Court finds a Rule 30(b)(6) deposition here is unnecessary, is overly-burdensome, and simply is not appropriate under the circumstances of this case. It is not necessary because the documents produced in discovery set forth in black and white any relevant policies and procedures. Those documents are available to both sides and their respective experts. Plaintiff's experts are free to independently evaluate the documents and opine as they wish. Because such a deposition is not necessary, it is overly burdensome and appears to be an attempt to further bind the government when its written policies already bind it. Additionally, a Rule 30(b)(6) deposition here is not necessary to fulfill the purpose of avoiding bandying by government representatives who may or may not have relevant information. Defendants provided that relevant information when they produced hundreds of pages of policies and training records. The effort, expense, scheduling, coordinating, and conducting a deposition on Topic 5 is not justified here and is overly burdensome as a result. The Court GRANTS Defendants' request for a protective order with respect to this topic.

7. Topic 6 involves the "ownership of the land within the Relevant Area in August 2014"—a simple issue that should ordinarily be resolved with ease through an interrogatory, requests for production of documents (for example, for maps showing the boundaries of state and federally-owned land or other documents showing ownership and control of the relevant area), or requests for admission. However, Plaintiff seeks to foist the burdens and expenses of a full-blown deposition upon Defendants for this very narrow issue, which, if allowed, would necessarily rely to a great extent upon source

---

Facilities; OIG Report re DHS oversight of component use of force; CBP Use of Force Review.

Defendants have also produced nearly 700 pages of the "[c]omplete training records of all 5 Individual Agents" as well as the "DHS OIG report on CBP Use of Force Training and Actions To Address Use of Force Incidents." The deposition transcripts included as exhibits to Defendants' brief also demonstrates Plaintiff's counsel questioned Defendants about their training histories.

7

documents that could be produced in discovery with far greater ease and much less burden. Indeed, Defendants have produced documents filed in *United States v. 53.14 Acres of Land*, No. 08-CV-506-CAB(NLS). These documents relate to the eminent domain condemnation of land in and around the relevant area. The various filings in that case include engineering, survey diagrams, and legend descriptions of the land. To the extent these documents do not include certain relevant parcels of land, Plaintiff may seek additional discovery related to land not covered in the eminent domain case.

Like a carpenter, attorneys have various tools at their disposal and should choose the right tool for the job. A carpenter would not hammer a small nail into a wall and then follow up with strikes from a sledgehammer. Here, Plaintiff attempts to apply the litigation equivalent of a sledgehammer to a nail. The great expense and effort—including the highly likely litigation that will follow from counsels' disputes during the deposition—that a deposition will require *greatly* outweigh whatever marginal benefit Plaintiff thinks he can derive. Accordingly, the Court GRANTS Defendants' request for a protective order with respect to this topic. However, since it appears the ownership of the land is a subject not previously addressed in discovery, Plaintiff is granted leave to propound one interrogatory (without sub-parts) *or* request for production of documents (without sub-parts) on this subject.

8. Topic 7 seeks information about policies on agents' completion of various investigation reports. Plaintiff has deposed various agents on their practices, and Defendants represent that "[n]o written policies are known to exist." If no known written policies exist, a deposition on this subject would be an exercise in futility resulting in waste of time, effort, money, and resources. In light of the depositions of individual agents, and accepting Defendants' representation that known written policies do not exist, the Court finds a Rule 30(b)(6) deposition would be overly burdensome. The Court GRANTS Defendants' request for a protective order on Topic 7.

9. Topic 8 seeks information on the "functionality of and data storage policies for the e3 system/database, and any other systems/databases on which records of investigation . . . ." As an initial matter, "functionality" is vague and does not allow Defendants to find or prepare a potential Rule 30(b)(6) witness. That flaw notwithstanding, this topic is even broader than Topic 7, as Topic 8 broadly delves into the Border Patrol's internal record-keeping technology and practices. Other than asserting that "deponents have given incomplete and disparate information about how these documents are stored and accessed," Plaintiff does not explain why this subject area matters and has accordingly failed to meet Defendants' relevance objection. Accordingly, a Rule 30(b)(6) deposition on this subject area would be overly burdensome. The Court GRANTS Defendants' request for a protective order on this topic.

10. Topics 9 through 11 seek information on the "operation, maintenance, and data retention of any camera controlled by the USA" and how two specific video files were created, stored, retrieved, and edited. Defendants counter that responsive information exists in the declarations of several individuals and that those declarations have been filed in this case as Doc. No. 68-3. Defendants lodge various objections to these requests.[5]

---

[5] An additional dispute related to the RVSS camera system is defense counsel's apparent instructions to Mike Apple, the Border Patrol employee in charge of the RVSS system, to not answer questions during his deposition. Counsel did so on the basis that the law enforcement privilege protects details of the RVSS system. (See Doc. No. 78 at 5-9.) Defendants contend details of the RVSS system, including its operation, capabilities, and blind spots, are protected by the law enforcement privilege. The Court agrees. The RVSS system watches over what is commonly known to be a sensitive international border with extremely high legal and illegal cross-border traffic. The Court finds the government has a heightened interest in protecting the operational capabilities and vulnerabilities of the RVSS system, a highly sensitive system that is crucial to the national security of the United States. In contrast, Plaintiff has provided little to counterbalance the government's heightened interest. And from what this Court has been presented, any suggestion that RVSS video was tampered with or that actual

9

It is unclear why Plaintiff seeks the information in Topics 9-11 through a Rule 30(b)(6) deposition. Several Border Patrol personnel have provided sworn declarations stating that the equipment used to record the underlying events in this case was working properly and that none of the videos or audio recordings were edited, deleted, or "doctored" in any way. (Doc. No. 68-3.) Plaintiff sets forth three purported bases for a Rule 30(b)(6) deposition, but none of these conclusory reasons convincingly explains the propriety of a Rule 30(b)(6) deposition here. Any marginal value a deposition may have is heavily outweighed by the burden it will impose. To the extent Plaintiff seek general information about the RVSS system, that subject has been addressed in the footnote in the preceding paragraph. The Court GRANTS Defendants' request for a protective order on these topics.

11. Like Topics 5 and 7, Topic 12 seeks information about (1) "policies concerning radio communications among agents on patrol duty near Border Field State Park" and (2) "data storage policies concerning such communications systems." As to both of these subjects, Defendants object based on relevance and disproportionality grounds and have invoked—without analysis—the official information privilege.[6] Plaintiff counters that during the underlying event, some agents switched their handheld radios to a radio frequency that was not ordinarily recorded. Without explaining the relevance of this topic, Plaintiff then merely asserts he "requires discovery into policies and technical information regarding these issues." Although policies can be relevant to a negligence claim, the negligence claim here relates only to the agents' use of force while the policies in Topic 12 relate to radios and data storage. Plaintiff has not explained the relevance of these policies in response to Defendants' relevance

---

footage of the underlying events here has been withheld or deleted is pure speculation. Based on the balance of interests, the Court SUSTAINS Defendants' law enforcement privilege objection and declines to authorize further inquiry into the RVSS system.

10

objection, and it is unclear how data storage and radio communications policies bear on his negligence claim. Defendants' relevance objection is SUSTAINED, and the Court GRANTS Defendants' request for a protective order on this topic.

12. Through Topic 13, Plaintiff seeks information about "[m]edical leave, 'light duty,' and any other accommodations available when a Border Patrol agent is injured." Plaintiff contends this topic is relevant to the counterclaim against him, in which the government seeks "over a half million dollars, in part due to Agent Johnson's missed work." The Court finds this topic is relevant to the damages element of the counterclaim, and the Border Patrol's accommodations of Agent Johnson during his injury bear on damages. Defendants state they have produced the injured agent's medical records, but medical records do not address the subject of this topic. Further, Defendants do not lodge any secondary objections in their extensive chart of objections, and any applicable objections in their brief are unpersuasive. Defendants' request for a protective order is DENIED. Defendants shall identify a suitable Rule 30(b)(6) witness who can testify about the subject matter of this topic.

13. Through Topic 14, Plaintiff seeks information about the "assignment of a claim for compensation to the USA pursuant to the Federal Employees' Compensation Act, specifically including the circumstances under which an agent may or must assign his or her claim to the USA." Plaintiff's explanation for this topic is the same as Topic 13. However, this topic will clearly require a witness to make legal conclusions, and its subject matter is covered by statutes and regulations, which Defendants cite in their objections chart. Additionally, Defendants have produced paperwork related to the injured agent's assignment of his claim to the government. The Court GRANTS Defendants' request for a protective order as to this topic.

---

[6] The official information privilege clearly does not apply to these Border Patrol polices, which are neither "deliberative" nor "predecisional." *See generally Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002).

14. Finally, Plaintiff seeks extension of the fact discovery deadline in order to conduct the Rule 30(b)(6) deposition. Defendants oppose any extension. Based on the rulings in this Order, Plaintiff's *ex parte* motion is DENIED. However, the parties are granted 21 days from the date of this Order to conduct the discovery permitted in paragraphs 7 and 12 above. The written discovery in paragraph 7 shall be propounded within 7 days of this Order, and Defendants shall respond within 14 days of this Order. The deposition in paragraph 12 shall be completed no later than 21 days of this Order.

**IT IS SO ORDERED.**

DATED: January 23, 2018

Hon. William V. Gallo
United States Magistrate Judge

12

16-CV-1986-W(WVG)