# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ALTON JONES,

                                    Plaintiff,

v.

U.S. BORDER PATROL AGENT
HERNANDEZ, et al.,

                                    Defendants.

Case No.:  16-CV-1986 W (WVG)

**ORDER:**

**(1) GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
COMBINED MOTION FOR
SUMMARY JUDGMENT [DOC. 98];**

**(2) GRANTING DEFENDANT
UNITED STATES' MOTION FOR
SUMMARY JUDGMENT ON ITS
COUNTERCLAIM [DOC. 98]; AND**

**(3) GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT ON THE FOIA CAUSE
OF ACTION [DOC. 101]**

    Pending before the Court are: (1) a combined motion for summary judgment filed
by all defendants [Doc. 98]; (2) a motion for summary judgment filed by Defendant
United States on its counterclaim [Doc. 98]; and (3) a motion for summary judgment on
the FOIA cause of action, filed by Defendants U.S. Department of Homeland Security
("DHS"), and U.S. Customs and Border Protection ("CBP").  [Doc. 101.]

//

1

The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' combined motion for summary judgment, **GRANTS** Defendant United States' motion for summary judgment on its counterclaim, and **GRANTS** the motion for summary judgment on the FOIA cause of action.

## I.    INTRODUCTION

On August 9, 2014, Alton Jones began a run onto a restricted Border Patrol surveillance road adjacent to the U.S.-Mexico border fence. When federal agents confronted him and attempted to remove him from the area, he ran away. They gave chase and apprehended him. In the process, an agent suffered a severe ankle injury and was rushed to the hospital via ambulance. Jones was detained overnight and released without charge the next morning. He filed this lawsuit seeking damages from the United States and the agents who took him into custody. The United States counterclaimed seeking damages for the agent's injured ankle.

## II.    FACTUAL BACKGROUND

Taken in the light most favorable to Jones, the facts are as follows.

Alton Jones is a former Navy SEAL, honorably discharged in 1990. (*TAC* [Doc. 72] ¶ 1[1]; *Jones Depo.* [Doc. 52-6] 156–57.) On August 9, 2014, Jones traveled by car to the Border Field State Park in San Diego California. (*TAC* [Doc. 72] ¶ 2.)

//

---

[1] Defendants' motion indicates that "Defendants do not intend to dispute the *specific* allegations of material *fact* in the [TAC], except the allegations that Jones was 'pummeled' and 'tackled without any warning' and that there were no indicators that the All-Weather Road was restricted." (*Defs.' MSJ* [Doc. 98-1] 3:27–4:2.)

Jones embarked on a run on a restricted surveillance road directly adjacent to the border fence. This area was marked with several types of barriers and with signs indicating it was off-limits, but these were visible only from the north—not from the west, the direction from which Jones began his run. (*See Defs.' Photos of Paved Road* [Doc. 98-2]; *Jones' Photos of Dirt Path* [Doc. 98-2] 72–75; *Defs.' MSJ* [Doc. 98] 4–5.) Sensors detected Jones' presence on the road, and agents in the field were notified by radio. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:17:38–15:18:10.)[2]

Border Patrol Agent Johnson was the first to respond. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:19:00.) He drove his marked Border Patrol Chevrolet Tahoe towards Jones and stopped it just beside him. (*Id.* [Doc. 53, Password: !USAO_Cv1986] 15:19:00–15:19:15.) The video shows Johnson backing up his marked SUV slowly as though trying to speak to Jones or get his attention. (*Id.*) Jones ignored him. (*Id.*) He testified that he did not recall Johnson speaking to him, but that he was on the phone with his wife—ostensibly through earphones—and "not paying attention" to the SUV immediately adjacent to him on the narrow road. (*Jones Depo.* [Doc. 52-6] 63–65.) Jones did notice the vehicle, however, as he testified that he yelled out, "I'm running up the hill[,]" and otherwise continued running. (*Id.*; *RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:19:01–15:19:20.)

After this brief encounter, Agent Hernandez drove up beside Agent Johnson. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:19:24–15:19:30.) Johnson

---

[2] Much of the initial pursuit was captured on video. When Jones fled, he led his pursuers behind a hill, thus obscuring his arrest from the view of the camera. Jones' attorneys paint this as part of an intentional plot on the part of arresting agents to lead Jones to a camera blind spot so as to abuse him. (*See, e.g.*, *Pls.' MSJ Opp'n* [Doc. 104] 2.) This is not plausible. Jones chose to flee, and agents followed where he led.

Moreover, whereas Jones represents to the Court in no uncertain terms that all involved agents knew the area to be a blind spot of the RVSS camera system at the time of the incident, (*Pls.' MSJ Opp'n* [Doc. 104] 2, 9–10), a close review of the relevant testimony shows this to be less than accurate. (*Hernandez Depo.* [Doc. 98-6] 280–81; *Bowen Depo.* [Doc. 98-7] 237–38; *Johnson Depo.* [Doc. 98-5] 216.)

3

drove up to briefly meet him, with Johnson's SUV facing westward and Hernandez's SUV facing eastward—towards Jones. (*Id.*) The two had a brief exchange through open windows. Johnson told Hernandez that he had instructed Jones to stop, but had been ignored. (*Johnson Depo.* [Doc. 98-5] 135.) Hernandez acknowledged and said that he would go and talk to Jones. (*Id.*)

Hernandez took up pursuit, as Johnson's SUV was facing the opposite direction. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:19:28–15:19:45.) Hernandez quickly caught up with Jones and cut him off with his vehicle so as to block Jones' continued run eastward on the surveillance road. (*Id.*) Hernandez did not initially get out of the vehicle. (*Id.*)

Jones simply ran around Agent Hernandez's SUV. In order to do so, he had to briefly run off the paved road to get around the Border Patrol vehicle that was now directly in front of him. (*Id.*) Jones testified that the SUV "pulled in front of [him]" in a "very sudden" manner, but that that he nonetheless "proceeded around[.]" (*Jones Depo.* [Doc. 52-6] 67.) Jones again testified that he was on the phone with his wife during this encounter, ostensibly through earphones. (*Id.*)

At this point, Hernandez accelerated forward and cut Jones off a second time. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:19:40–15:20:00.) This time, Hernandez got out of his SUV and confronted Jones. (*Id.*) Hernandez told Jones to turn around. (*Hernandez Depo.* [Doc. 98-6] 192–93; *Jones Depo.* [Doc. 52-6] 78.) Jones moved from side to side as though trying to get around Hernandez, with the agent blocking Jones' path with his body. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:19:50–15:20:10.) The agent called for backup, and Jones backed away. (*Id.* [Doc. 53, Password: !USAO_Cv1986] 15:20:00–15:20:20.)

During this encounter, Agent Johnson had turned his SUV around on the dirt path parallel to the paved road. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:20:00–15:20:20.) He reemerged onto the paved road several seconds later, at which

4

point he pulled up alongside Jones and just behind Hernandez. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:20:05–15:20:25.)

Johnson then got out of his vehicle. Jones slowly backpedaled for several seconds. (*Id.*; *Johnson Depo.* [Doc. 98-5] 139–40.) Jones then turned and ran away in earnest when Hernandez turned his SUV around to pursue him. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:20:30–15:21:00.) Jones kept running from Hernandez's SUV for at least 45 seconds, after which he exited the view of the camera. (*Id.* [Doc. 53, Password: !USAO_Cv1986] 15:20:30–15:21:15.) All the while, the two Border Patrol SUVs were following just behind. (*Id.*) Just as Jones led the pursuing agents out of view of the surveillance camera, the pursuing Border Patrol SUV stopped, and its drivers'-side door opened. The second Border Patrol SUV then passed. (*Id.* [Doc. 53, Password: !USAO_Cv1986] 15:21:00–15:21:55.) A third Border Patrol SUV pulled up just behind. (*Id.*)

Out of view of the RVSS camera system, two more agents came from ahead (the west) on all-terrain vehicles: Agents Bowen and Faatoalia. (*Jones Depo.* [Doc. 52-6] 84–105; *Faatoalia Depo.* [Doc. 98-8] 124; *Bowen Depo.* [Doc. 98-7] 186–209.) They tried to stop Jones, but he once again tried to run around them. (*Jones Depo.* [Doc. 52-6] 100.) The agents tackled Jones. (*Id.* [Doc. 52-6] 100–04, 125–28, 135, 142–45; *Bowen Depo.* [Doc. 98-7] 197–205; *Faatoalia Depo.* [Doc. 98-8] 137–44.) Agent Johnson suffered a severe ankle injury that required emergency hospital transport, surgery, and months of light duty. (*RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:22:00–15:45:00; *Johnson Depo.* [Doc. 98-5] 102–05.) Jones suffered abrasions consistent with a fall onto a hard surface. (*Injury Photographs* [Doc. 98-2] 13–44.) Jones also experienced stiffness and tenderness in his neck, stiffness and decreased range of motion in his right shoulder, and stiffness and tenderness in his left wrist. (*See Wesley Progress* Notes [Doc. 59]; Wesley *Depo.* [Doc. 52-3] 24–31.)

After being handcuffed, Jones was placed in a locked Border Patrol SUV with the windows up and the heater on for about twenty minutes—on a sunny August afternoon.

5

(*Jones Depo.* [Doc. 52-6] 150–51; *RVSS Recording* [Doc. 53, Password: !USAO_Cv1986] 15:22:00–15:45:00.)  Jones was held at the Imperial Beach Border Patrol Station until the next morning.  His requests for medical care were met with threats of being strapped to a restraint chair with a spit bag over his head.  (*See Jones Depo.* [Doc. 52-6] 232–35.)  He was released without charge the next morning.

Jones has filed the expert report of Dr. Colin Koransky, Ph.D, clinical psychologist, who evaluated Jones.  Dr. Koransky's eighteen-page expert report opines that being arrested by the Border Patrol "reactivated" Jones' post-traumatic stress disorder ("PTSD").  (*Koransky Expert Report* [Doc. 114] (filed under seal).)

### III.  LEGAL STANDARD

Summary judgment is appropriate under Rule 56 when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can satisfy this "burden of production" in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  See id. at 322–25; Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102–03 (9th Cir. 2000) (explaining relevant burden-shifting terminology).  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

6

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the Court is not obligated "to scour the record in search of a genuine issue of triable fact . . . ." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

If the moving party meets its initial burden of production on the motion, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. Anderson, 477 U.S. at 255.

## IV.   DISCUSSION

### A.    Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct ' does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation

7

omitted)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " Id. (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotation omitted)). There need not be a case directly on point, but " 'existing precedent must have placed the statutory or constitutional question beyond debate.' " Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' " Id. (quoting al-Kidd, 563 U.S. at 742). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)) (internal quotation omitted). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme Court of the United States] has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.' " Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

" '[The Supreme Court of the United States has] repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.' " City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1775–76 (2015) (quoting al-Kidd, 563 U.S. at 742)). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) (quoting Mullenix, 136 S. Ct. at 309).

### 1. Unconstitutional Arrest and Detention

Proceeding to the second step of the qualified immunity analysis, see Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) (explaining that use of the two-step analytical

8

framework of <u>Saucier</u>, 533 U.S. at 200, is now discretionary per <u>Pearson v. Callahan</u>, 555 U.S. 223, 227 (2009)), neither Jones' arrest nor detention violated clearly established constitutional rights.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152 (2004).

To refuse to leave restricted federal land upon request by law enforcement is a criminal offense. <u>See</u> Cal. Penal Code § 602(o). It is also a criminal offense to willfully resist, obstruct, or delay law enforcement. <u>See</u> Cal. Penal Code § 148. And it is a criminal offense to assault a federal officer. 18 U.S.C. § 111.

On this record, it is beyond genuine dispute that agents had probable cause to arrest Jones for violation of all three of these statutes. Jones ignored Johnson's initial attempts to remove him from the restricted road when the agent drove up alongside—despite acknowledging that he saw him. He ran around Agent Hernandez when the latter then pulled his marked Border Patrol SUV directly in front to cut him off. When Hernandez got out of his car to try to stop him, the RVSS video shows that Jones' actions forced the agent to call for backup. Jones then ran away for another 45 seconds. When four agents finally caught up with him, Jones' attempts to keep running resulted in a serious ankle injury to an arresting agent.

In light of the foregoing, it cannot be said that arresting Jones and detaining him overnight violated a Fourth Amendment right " 'sufficiently clear that every reasonable official would have understood that what he is doing violate[d] that right.' " <u>Mullenix</u>, 136 S. Ct. at 308 (quoting <u>Reichle</u>, 566 U.S. at 664 (internal quotation omitted)).

All individual defendants are entitled to summary judgment on the first <u>Bivens</u> claim on grounds of qualified immunity.

9

## 2. Excessive Force

Proceeding to the second step of the qualified immunity analysis, see Plumhoff, 134 S. Ct. at 2020, the force used against Jones in his arrest violated no clearly established Fourth Amendment rights.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97. This is an objective inquiry. Id.

Jones initially testified that agents kicked him in the head after they had already brought him to the ground. (*Jones Depo.* [Doc. 52-6] 101.) But he later backtracked, testifying, "I think I might have been kicked, but I can't tell you that for sure." (*Id.* [Doc. 52-6] 143.) Agents testified that Jones was not kicked during his arrest. (*Bowen Depo.* [Doc. 98-7] 209; *Faatoalia Depo.* [Doc. 98-8] 141.)

The evidentiary record is inconsistent with the theory that the force used in Jones' arrest violated Fourth Amendment rights of which any reasonable agent would have been aware. Mullenix, 136 S. Ct. at 308. Photographs taken after the incident show only redness and abrasions on Jones' skin consistent with being tackled on a hard surface. (*Injury Photographs* [Doc. 98-2] 14–44.) Jones' physician's progress notes and deposition show that Jones did not report being kicked or punched after the incident. (*Wesley Progress* Notes [Doc. 59]; Wesley *Depo.* [Doc. 52-3] 24–31.) He showed a "stiff range of motion" in his neck, a "decreased range of motion" in his right shoulder

with "no tenderness[,]" and a "decreased range of motion and tenderness" in his left wrist. (*Id.*) X-rays of the right shoulder and left wrist were "negative." (*See Wesley Progress* Notes [Doc. 59] 2; *Wesley Depo.* [Doc. 52-3] 25–26, 40.) In Facebook messages to friends just afterward the incident, Jones described being "captured" or "taken hostage" by "[f]ederal nothing wannabe cops[,]" telling one friend that he "thought they were gona [sic] shoot me or beat me up[.]" (*Facebook Messages* [Doc. 98-2] 47–70.) He did not mention being beaten or kicked. In a complaint to Senator Feinstein, Jones again mentioned being captured, detained, and released without charge. (*Feinstein Complaint* [Doc. 98-2] 71.) Again, he did not mention being beaten or kicked.

Jones ignored agents' attempts to remove him from a restricted area. He offered physical resistance, compromising the safety of agents involved—as is evident from the serious and long-lasting injuries suffered by Agent Johnson. Nonetheless, faced with a rapidly evolving situation and a combative suspect, the evidence leaves no room for genuine dispute that agents were able to subdue Jones without causing him serious physical harm. The question at this stage is not whether the force used in the arrest was reasonable. It is whether, viewed without the advantage of hindsight from the perspective of agents on scene rather than that of a judge's chambers, <u>Graham</u>, 490 U.S. at 396, any constitutional questions implicated by the force used in the arrest[3] were "beyond debate" such that the agents involved were "plainly incompetent" or knowingly violate[d] the law." <u>See</u> <u>Mullenix</u>, 136 S. Ct. at 308. The answer is no.

The motion for summary judgment as to the excessive force <u>Bivens</u> claim will be granted on qualified immunity grounds.

//

//

//

---

[3] Plaintiff argues only that the force involved with the arrest itself was constitutionally excessive. (*Pls.' MSJ Opp'n* [Doc. 104] 26–30.)

### 3. Unconstitutional Search

Proceeding to the second step of the qualified immunity analysis, see Plumhoff, 134 S. Ct. at 2020, the search incident to Jones' arrest violated no clearly established Fourth Amendment rights.

After Agent Johnson's ankle was injured in the act of arresting Jones, agents had probable cause to believe that Jones had engaged in criminal trespass, Cal. Penal Code § 602(o), willfully resisting, obstructing, or delaying law enforcement, Cal. Penal Code § 148, and assaulting a federal officer. 18 U.S.C. § 111. As there was probable cause to arrest Jones, it was lawful to search him incident to arrest. See Jones v. United States, 357 U.S. 493, 499 (1958).

All individual defendants are entitled to summary judgment on the third Bivens claim on grounds of qualified immunity.

### B. FTCA

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. This section, known as the Federal Tort Claims Act ("FTCA"), "provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000).

Pursuant to the FTCA, Jones brings claims for False Arrest/Imprisonment, Battery, Assault, Negligence, Intentional Infliction of Emotional Distress, and for violation of Cal. Civ. Code § 52.1. (*TAC* [Doc. 72] ¶¶ 101–121.) The government moves for summary judgment on each claim. (*Defs.' MSJ* [Doc. 98-1] 29–39.) The court addresses each in turn.

//

//

### 1. False Arrest/Imprisonment

In California, "[f]alse imprisonment is the unlawful violation of the personal liberty of another." Cal. Penal Code § 236. "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Tekle v. U.S., 511 F.3d 839, 854 (9th Cir. 2007) (quoting Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 496 (2000)).

For the reasons discussed above in Part IV.A.1., *supra*, agents had probable cause to arrest Jones for criminal trespass, Cal. Penal Code § 602(o), willfully resisting, obstructing, or delaying law enforcement, Cal. Penal Code § 148, and assaulting a federal officer. 18 U.S.C. § 111. As there was probable cause to arrest Jones, the arrest was with lawful privilege and there was no false arrest. See Tekle, 511 F.3d at 854.

Defendants' motion for summary judgment will be granted as to the false arrest/imprisonment claim.

### 2. Battery

The elements of a civil battery claim in California are: "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526–27 (2009). "Plaintiff must prove unreasonable force as an element of the tort" of civil battery. Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998).

Jones' testimony that agents hit him during his arrest (*Jones Depo.* [Doc. 52-6] 141–44), together with evidence of mild injuries afterwards (*Injury Photographs* [Doc. 98-2] 14–45, *Wesley Progress* Notes [Doc. 59]; Wesley *Depo.* [Doc. 52-3] 24–31), leave room for genuine dispute as to whether the force used to subdue Jones during the arrest was reasonable. (*Jones Depo.* [Doc. 52-6] 142–44.) See Edson, 63 Cal. App. 4th at 1272.

The motion for summary judgment on the battery claim will be denied.

### 3. Assault

" 'Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present.' " Plotnik v. Meihaus, 208 Cal. App. 4th 1590, 1603–04 (2012) (quoting Lowry v. Standard Oil, 63 Cal. App. 2d 1, 6–7 (1944). The elements of a claim for assault in California are: (1) "that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (internal quotation omitted).

The evidence discussed in Part IV.B.2, *supra*, leaves room for genuine dispute as to whether agents intended to cause harmful or offensive contact during Jones' arrest. See Austin, 367 F.3d at 1172. Defendants' motion for summary judgment on this theory of assault will be denied.

Second, Jones contends that Agent Kulakowski's driving him to the Imperial Beach Border Patrol Station via a dirt road while wearing gloves constitutes assault. (*MSJ Opp'n* [Doc. 104] 35.) It does not. He suggests through the use of the term "rough ride" that he was either injured in the back of Kulakowski's SUV, or that Kulakowski intended to cause him imminent fear of harm. (*Id.*) There is no evidence of this. Merely riding in a law enforcement vehicle, without more, is not assault. Defendants' motion for summary judgment will be granted as to this theory.

Third, Jones argues that he was assaulted when agents threatened to strap him to a chair during his detention at the Border Patrol station. (*MSJ Opp'n* [Doc. 104] 36.) The evidence gives rise to a genuine dispute as to whether agents intended to place Jones in imminent apprehension of harm. (*Jones Depo.* [Doc. 52-6] 237.) Defendants contend that any threats were conditional and lacked sufficient imminence, but this construction is inconsistent with that afforded to assault by California courts. See, e.g., People v.

14

Stanfield, 32 Cal. App. 4th 1152, 1161 (1995); People v. Bolin, 18 Cal. 4th 297, 339 (1998), *as modified on denial of reh'g* (Aug. 12, 1998).  Defendants' motion for summary judgment will be denied as to this theory.

### 4. Negligence

"The elements of a negligence cause of action [in California] are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care."  Brown v. Ransweiler, 171 Cal. App. 4th 516, 534 (2009).

The government argues that the FTCA negligence claim "should be dismissed for the same reason that the battery claim should be dismissed, discussed above."  (*Defs.' MSJ* [Doc. 98-1] 34.)  It does not elaborate further.  This is not persuasive.  Viewing the evidence in the light most favorable to the plaintiff, there is a genuine dispute as to whether agents kept Jones in a hot car for about 20 minutes with the heater on during a sunny August afternoon in Southern California.  (*Jones Depo.* [Doc. 104-1, Exh. A] 151; *RVSS Recording* [Doc. 53, Password: !USAO_Cv1986].)  There is a dispute as to whether they denied requests for medical care through an overnight detention.  (*Id.* [Doc. 104-1, Exh. A] 228–29.)  And finally, there is evidence to show that when Jones complained of pain in his shoulder, agents threatened him with a restraint chair.  (*Id.* [Doc. 104-1, Exh. A] 70, 215, 234–35, 237–39.)  A reasonable jury could find negligence on these facts, and injury in the form of exacerbation of Jones' preexisting post-traumatic stress disorder ("PTSD").

Defendants' motion for summary judgment as to the FTCA negligence claim will be denied.

### 5. Intentional Infliction of Emotional Distress ("IIED")

" 'The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the

intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.] . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " Miller v. Fortune Commercial Corp., 15 Cal. App. 5th 214, 228–29 (2017) (quoting Wilson v. Hynek, 207 Cal. App. 4th 999, 1009 (2012)).

The government argues that there is no evidence that the agents engaged in extreme and outrageous conduct, or that Jones suffered extreme or severe emotional distress as a result. (*Defs.' MSJ* [Doc. 98-1] 34–35.) It is mistaken. The conduct described in Part IV.B.4. as to negligence is sufficiently outrageous as to exceed all bounds usually tolerated in a civilized community. See Miller, 15 Cal. App. 5th at 228–29. There is evidence upon which a reasonable jury could find that law enforcement officers locked Jones in a hot car in August with the heater on, refused him medical care during an overnight detention, and threatened to physically restrain him when he complained of pain and asked for help. (*See Part IV.B.4, Supra.*) Dr. Koransky's expert report gives rise to a genuine dispute as to whether Jones suffered extreme emotional distress and an aggravation of his preexisting PTSD as a result of these actions. (*Koransky Expert Report* [Doc. 114] (filed under seal).)

Defendants' motion for summary judgment as to the FTCA IIED claim will be denied.

### 6. Cal. Civ. Code § 52.1

The government advances two arguments as to Jones' Bane Act cause of action.

First, it argues that the FTCA's sovereign immunity waiver does not extend to claims for violations of the Bane Act. (*Defs.' MSJ* [Doc. 98-1] 36.) The Ninth Circuit has implicitly decided that it does in a recent published opinion. Xue Lu v. Powell, 621 F.3d 944, 949–50 (9th Cir. 2010).

16

Second, it argues that Jones will be unable to satisfy the elements of the claim.

The elements of a Cal. Civ. Code § 52.1 claim are: (1) that the defendant interfered with or attempted to interfere with a legal right of the plaintiff; (2) by threatening or committing violent acts. Doe v. State of California, 8 Cal. App. 5th 832, 842 (2017), *review denied* (June 14, 2017). "Coercion inherent in the alleged constitutional violation, i.e., an overdetention in jail, is insufficient to meet the statutory requirement of 'threat, intimidation, or coercion.' " Id. at 842–43 (quoting Shoyoye v. Cnty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012)). A wrongful arrest and detention is not enough. Id. at 843.

The government posits that Jones was threatened with a restraint chair and a spit bag for his head only after he banged on his cell door—and that, as a result, these threats cannot support a Bane Act claim. On the contrary, Jones testified that the threats came in response to requests for medical care. (*Jones Depo.* [Doc. 52-6] 237.) The Court may not infer in the government's favor that these threats were an appropriate response to Jones' behavior. See Matsushita, 475 U.S. at 587. The motion for summary judgment will be denied as to this theory.

However, the government is correct that Jones' arrest and detention cannot sustain a Cal. Civ. Code § 52.1 claim against it. Agents had probable cause for this arrest, and there is no evidence that any coercion used to effectuate it was part of an attempt to interfere with Jones' legal rights. Jones had no right to be where he was. Nor did he have a right to willfully delay or obstruct the officers trying to remove him. Jones contends, "[a] reasonable factfinder could conclude that Agent Hernandez's response—to call for backup, lead Jones to a blind spot of the RVSS camera system, tackle and detain him, and lie about an assault on an officer—had no reasonable purpose, and was instead intended to threaten, intimidate, and coerce Jones . . . ." (*MSJ Opp'n* [Doc. 104] 38–39.) Jones is incorrect. Even drawing all inferences in favor of Jones, the RVSS video leaves no room for genuine dispute that agents were trying to arrest a combative individual who

ignored them and ran away in a restricted area. The motion for summary judgment will be granted as to this theory.

## C. The Government's Counterclaim for Negligence

The government moves for summary judgment on its negligence counterclaim on the basis of the negligence per se doctrine. (*Defs.' MSJ* [Doc. 98-1] 37–39.)

In California, the negligence per se doctrine is statutory:

(a) The failure of a person to exercise due care is presumed if:
    (1) He violated a statute, ordinance, or regulation of a public entity;
    (2) The violation proximately caused death or injury to person or property;
    (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and
    (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.
(b) This presumption may be rebutted by proof that:
    (1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . .

Cal. Evid. Code § 669.

The government contends that Jones' violation of Cal. Penal Code § 148(a)(1) by resisting the efforts of the agents to remove him from the road is negligence per se, and that Jones lacks evidence to rebut the presumption. (*Defs.' MSJ* [Doc. 98-1] 37–39.) The government is correct.

Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

18

Cal. Penal Code § 148(a)(1).  Even crediting Jones' testimony that Agent Hernandez told him to turn around after he had run around him once, Jones was soon chased by two agents from behind and confronted by two other agents from the west, on all-terrain vehicles.  Rather than stopping, he chose to try to escape:

> Q:    So okay.  So two more ATVs, you say, tried -- or blocked your path and you went around them?
> A:    Yes, sir.
> Q:    Okay.
> A:    No, I didn't go around them.  I was – I was going around them as I had previously done heading back to where I came from.  And as soon as I tried to go around them, they jumped on me, and they took me down to the ground.  And then they got me down on the ground, and I'm going, "why are you guys doing?  I ain't done nothing.  Why are you doing this?"

(*Jones Depo.* [Doc. 52-6] 100–01.)

Jones testified that he knew the agents on the ATVs were law enforcement officers, that they pulled up on the road in front of him to block his path, and that he still tried to run around them.  (*Jones Depo.* [Doc. 52-6] 104–05 ("[T]hey pulled up on the road in front of me . . . they're blocking me, and it was like I was being captured . . . . [A]s soon as I went past him he jumped on me.  I didn't slow down . . . . I just went -- tried to go around them . . . .")  By continuing to run when confronted by two agents blocking his path, Jones willfully resisted.  Cal. Penal Code § 148(a)(1).  This injured Agent Johnson, an occurrence of the type the statute was passed to prevent suffered by someone in the class of people for whose protection the statute was adopted.  See Cal. Evid. Code § 669; In re M.M., 54 Cal. 4th 530, 533 (2012).  There is no evidence that Jones did what might reasonably be expected of a person of ordinary prudence who

wanted to comply with the law when confronted by two federal agents with another two pursuing just behind—stop running.[4]  See Cal. Evid. Code § 669(b).

The government's motion for summary judgment on its negligence counterclaim will be granted.

## D.    Freedom of Information Act ("FOIA")

FOIA, 5 U.S.C. § 552 et seq., was enacted "to promote honest and open government" and "to ensure public access to information created by the government . . . ."  Wood v. FBI, 432 F.3d 78, 82 (2d Cir. 2005) (internal quotations omitted).  Because FOIA favors a policy of disclosure, the statutory exemptions are construed narrowly, resolving all doubts in favor of disclosure.  See Lion Raisins v. U.S. Dept. of Agriculture, 354 F.3d 1072, 1079 (9th Cir. 2004), *overruled on other grounds by* Animal Legal Defense Fund v. U.S. Food & Drug Administration, 836 F.3d 987 (9th Cir. 2016).

"Where the Government withholds documents pursuant to one of the enumerated exemptions of FOIA, 'the burden is on the agency to sustain its action.' "  Lion Raisins, 354 F.3d at 1079 (quoting 5 U.S.C. § 552(a)(4)(B)).  The government may rely on affidavits to establish that an exemption applies.  Lewis v. Internal Revenue Serv., 823 F.2d 375, 378 (9th Cir. 1987).  The affidavits, however, must demonstrate that the affiants are knowledgeable about the information sought and must include sufficient detail about the documents to allow the court to make an independent assessment of the government's claim.  Lion Raisins, 354 F.3d at 1080 (relying on affidavit that included

---

[4] Agent Bowen testified at deposition that Jones did briefly stop resisting, moving his hands together so that he could be handcuffed.  (*Bowen Depo.* [Doc. 98-7] 188–92.)  However, according to Bowen, only seconds later Jones then violently lunged towards Agent Johnson, injuring him.  (*Id.* [Doc. 98-7] 196–202.)

Even pursuant to this version of the facts, Jones' momentary cooperation is not enough to bring his behavior outside the purview of California's statutory negligence per se doctrine.  "A person of ordinary prudence, acting under similar circumstances, who desired to comply with the law" would not have offered this sort of violent resistance.  See Cal. Evid. Code § 669(b)(1).

"detailed and specific descriptions of each category of information included" on the document.).

Furthermore, FOIA requires that even if some materials from the requested record are exempt from disclosure, "any reasonably segregable information from those documents must be disclosed after redaction of the exempt information unless the [non-]exempt portions are inextricably intertwined with exempt portions." Johnson v. Exec. Office for United States Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotations omitted).

In deciding a motion for summary judgment in a FOIA matter, the Court may rely solely on affidavits submitted by the government describing the documents sought. Lion Raisins., 354 F.3d at 1082. "Ordinarily, the government must submit detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption . . . . [t]his submission is commonly referred to as a 'Vaughn' index." Id. (citing Vaughn v. Rosen, 484 F.2d 820, 823–25 (D.C. Cir. 1973)). In order to rule solely based on government affidavits, the declarants must be "knowledgeable about the information sought[,] and the affidavits [must be] detailed enough to allow the court to make an independent assessment of the government's claim" de novo. See id. at 1079.

The government's amended Vaughn index and accompanying exhibits leave no room for genuine dispute that it has conducted a search reasonably calculated to uncover all relevant documents, and that it has released all reasonably segregable non-exempt information in response to the FOIA request. (*Amended Vaughn Index* [Doc. 120-4, Exh. 31]; *Exhibits 32–63* [Docs. 120-5–120-36].) See Lion Raisins, 354 F.3d at 1082; Johnson, 310 F.3d at 776.

The motion for summary judgment on the FOIA cause of action will be granted.

//

//

21

## V.  CONCLUSION & ORDER

Defendants' combined motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. [Doc. 98.]

Specifically, it is denied as to the FTCA battery claim, the FTCA assault claim as to the theories that agents assaulted Jones by using force during his arrest and by threatening Jones at the Imperial Beach Border Patrol station, the FTCA negligence claim, the FTCA IIED claim, and the FTCA Bane Act claim as to threats delivered while Jones was in custody at the Imperial Beach Border Patrol Station.  The motion is otherwise granted.

The government's motion for summary judgment on its negligence counterclaim is **GRANTED.**  [Doc. 98.]

The government's motion for summary judgment on Jones' FOIA cause of action is **GRANTED**.  [Doc. 101.]


**IT IS SO ORDERED.**

Dated:  November 15, 2018

_____
Hon. Thomas J. Whelan
United States District Judge

22